HALL CHEVROLET COMPANY, INC., Petitioner-Appellant,
v. DEPARTMENT OF REVENUE, Respondent.

*No. 75–818. Argued November 29, 1977.—Decided January 3, 1978.*
(Also reported in 260 N.W.2d 706.)

478

For the appellant there were briefs by *Thomas J. Donnelly, Jr., Peter C. Karegeannes* and *Quarles & Brady* of Milwaukee, and oral argument by *Mr. Karegeannes*.

For the respondent the cause was argued by *E. Weston Wood*, assistant attorney general, with whom on the brief was *Bronson C. La Follette*, attorney general.

HEFFERNAN, J.   Hall Chevrolet Company, Inc., of Milwaukee, Wisconsin, claimed that it was entitled to carry forward to the tax years of 1971 and 1972 a loss that it had incurred by the sale of real estate in 1970. The disallowance of these losses resulted in additional tax against the petitioner in the amount of $4,963.03. Hall Chevrolet Company's application for the abatement of the tax was denied by the Wisconsin Department of Taxation on April 19, 1974.   Hall thereafter, on May 3, 1974, filed a petition for review with the Wisconsin Tax Appeals Commission.[1]   On September 29, 1975, the

---

[1] The case was heard before the commission on stipulated facts. The following are the findings of the commission based on those facts, and they accurately reflect the stipulation:

"1. Petitioner is Hall Chevrolet Company, Inc., 11011 W. North Avenue, Milwaukee, Wisconsin 53226. Petitioner is a Wisconsin corporation with its principal place of business located at the above stated address.

"2. A Notice of Additional Assessment was mailed by respondent to petitioner on October 4, 1973, making an additional assessment in petitioner's franchise or income tax for the years 1971 and 1972 in the total amount of $4,963.03. Petitioner made an Application for Abatement, dated October 19, 1973 and respondent issued its Notice of Denial, dated April 19, 1974.

Tax Appeals Commission issued a decision and order in which it concluded that the loss in question was not a

"3. On petitioner's return for the year 1970, a loss in the amount of $122,454.48 was reported. This loss has been disallowed by respondent to the extent of $63,268.92 in determining petitioner's business loss offset under Section 71.06 of the Wisconsin Statutes which has resulted in a disallowance of business loss offset for the year 1971 in the amount of $14,119.11 and for the year 1972 in the amount of $49,149.81.

"4. Petitioner had been for many years prior to the year 1970, and for the years 1970, 1971 and 1972, engaged in the business of selling and servicing new and used automobiles, and for this purpose at all times maintained new and used car sale showrooms and lots, parts and service facilities, office facilities and other related facilities and equipment. Prior to the year 1970, petitioner's place of business was located at 32nd Street and North Avenue, Milwaukee, Wisconsin. During the year 1970, petitioner's business location was changed to 11011 W. North Avenue, Milwaukee, Wisconsin, and during the year 1970, the land and buildings located at 32nd Street and North Avenue were sold, and it is the sale of this property that produced the loss for the year 1970 which respondent has disallowed in computing petitioner's business loss offset under Section 71.06 of the Wisconsin Statutes.

"5. The land and buildings located at 32nd Street and North Avenue were purchased and built by petitioner at various times from 1951 through 1964, and were at all times prior to their sale used by petitioner for new and used automobile showrooms, parts and service departments, office facilities and other facilities related to the operation of its business. The total cost of the land and buildings involved was $321,748.81, against which the petitioner, prior to the year 1970, claimed and was allowed depreciation in the amount of $131,629.80, resulting in a net Wisconsin tax cost basis at the time of sale of $190,191.01. The land and buildings were sold in their entirety during the year 1970 for $126,850.09, resulting in a loss in the amount of $63,268.92 which was claimed by petitioner as part of its loss for the year 1970, and as a part of its business loss offset for the years 1971 and 1972. The proceeds of the sale of the land and buildings located at 32nd Street and North Avenue continued to be used in the operation of petitioner's business.

"6. The sale of petitioner's business property at 32nd Street and North Avenue, combined with its move to 11011 W. North

"net business loss" within the meaning of sec. 71.06, Stats. (1973), because Hall was in the business of buying, selling, and servicing automobiles and was not in the business of buying or selling real estate.

A petition for review of the decision of the Tax Appeals Commission was brought in the Dane county circuit court on October 7, 1975, pursuant to ch. 227, the Administrative Procedure Act. The circuit court entered a judgment on March 22, 1976, affirming the order of the Tax Appeals Commission. The appeal is from the judgment of the circuit court.

The statute involved provides:

"Section 71.06 Corporation business loss carry forward. If a corporation in any year sustains a net business loss, such loss, to the extent not offset by other items of income of the same year, may be offset against the net business income of the subsequent year and, if not completely offset by the net business income of such year, the remainder of such net business loss may be offset against the net business income of the following year. For the purposes of this section, net business income shall consist of all the income attributable to the operation of a trade or business regularly carried on by the taxpayer, less the deduction of business expenses allowed in s. 71.04. . . ."

Avenue, was necessary due to the economic deterioration of the 32nd Street and North Avenue location. Petitioner was unable to operate profitably at 32nd Street and North Avenue; petitioner's operations became profitable after the move. The loss petitioner incurred on the sale of its land and buildings at 32nd Street and North Avenue resulted primarily from the diminution in value of property in the neighborhood due to the inability of businesses such as petitioner's to operate profitably in that area. The physical deterioration of the buildings in the 32nd Street and North Avenue area was not a significant factor in producing the loss which was incurred.

"7. For the year 1970 and for prior years, petitioner did not claim any extraordinary or additional depreciation or obsolescence due to the economic deterioration or lack of functional use of its land and buildings located at 32nd Street and North Avenue."

The stipulated facts demonstrate that the Hall Chevrolet Company was, and is, in the business of selling and servicing new and used automobiles. Prior to the year 1970, Hall's place of business was located at 32nd Street and North Avenue in Milwaukee. It maintained all of its facilities at that location. Due to the economic deterioration of the area, it was necessary to sell the property at that location and to move to a more advantageous site. At and before the time of the move from the deteriorated area, Hall operated at a loss. After the move, its operations became profitable. It sustained loss on the sale of the land and buildings at 32nd Street and North Avenue, because of the diminution in value as a result of the deterioration of the neighborhood.

It thus seems clear from the stipulated facts that the sale of the property was impelled by business reasons, in that the management had determined from past experience that the business could not operate profitably at the pre-1970 location.

Although Hall was permitted to offset a portion of the loss on the real estate sale in the year 1970, when the sale took place, its total losses for the year exceeded the gain, and Hall has attempted to carry over to the years 1971 and 1972 the losses which could not be applied against income in 1970. The department disallowed the carry-over from the loss of the land and buildings on the theory that, although such loss was deductible in the year of the loss, under sec. 71.04, Stats., that loss was not a net business loss within the meaning of sec. 71.06.

The Tax Appeals Commission concluded that the loss incurred on the sale of the land and buildings in 1970 did not constitute a net business loss within the meaning of sec. 71.06, Stats., because Hall was not in the business of buying and selling real estate.

The circuit court judgment upholding the Wisconsin Tax Appeals Commission was explained in a memoran-

dum opinion on substantially the same basis. It concluded that:

"While the instant sale of real estate was made for business reasons, the net loss which resulted therefrom was not 'attributable to the operation of a business *regularly* carried on by the taxpayer' (emphasis supplied [by circuit judge]) as that provision of sec. 71.06 was interpreted in the *Wald* decision."

Because the facts are stipulated, no weight need be given to factual determinations of the commission, and only a question of law is presented. When material facts are not in dispute and only matters of law are in issue, this court may review the record *ab initio* and substitute its judgment for that of the Tax Appeals Commission. *Department of Revenue v. Milwaukee Refining Corp.*, 80 Wis.2d 44, 48, 257 N.W.2d 855 (1977) ; *Recht-Goldin-Siegal Construction, Inc. v. Department of Revenue*, 64 Wis.2d 303, 307, 219 N.W.2d 379 (1974).

The circuit judge conceded that the taxpayer's interpretation of the statutory provision which would allow the loss carry-over was a rational one, but he concluded that he was required to defer to the interpretation adopted by the Board of Tax Appeals in the case of *Eugene Wald v. Wisconsin Department of Taxation,* 4 WBTA 513 (1960).

While the rule that the circuit judge relied upon is correct, we deem it inapplicable when our examination of *Wald* leads us to the conclusion that it consists only of findings of fact and conclusions of law and is completely devoid of any attempt at a reasoned justification. It is a decision without a rationale and, hence, on its face, must be deemed irrational. Perhaps a rationale could have been developed, but it was not; and, accordingly, the *Wald* case has no precedential or persuasive

value to this court, and we decline to resolve the instant question on the basis of so slender a reed.

The Department of Revenue, on the other hand, has set forth in its brief a rationale which attempts to justify the result in *Wald*. It starts with the basic proposition, with which we have no disagreement, that the construction of a tax statute depends on whether the provision in question is a deduction provision or a relief provision. Tax exemptions, deductions, and privileges, the department correctly asserts, are matters of legislative grace and will be strictly construed against the taxpayer. *Fall River Canning Co. v. Department of Taxation*, 3 Wis.2d 632, 637, 89 N.W.2d 203 (1958). That case involved the same statute, sec. 71.06, Stats., that is pertinent to the present one. Therein the court referred to the benefits granted to the taxpayer as a "deduction" and as a "privilege." (at 638) The same statutory provision was referred to as an exemption in *Bowman Dairy Co. v. Tax Commission*, 240 Wis. 1, 5, 1 N.W.2d 905 (1942).

While there has been some renumbering of the statutes, it is clear that sec. 71.06, Stats., in respect to the benefits afforded a taxpayer, whether denominated as deductions, privileges, or exemptions, falls within the strict construction rule explained in *Fall River*. Accordingly, the taxpayer, Hall Chevrolet, is required to bring itself within the terms of the statute in order to qualify for the benefits sought.

The pertinent portion of the statute provides for a carry-over of a "net business loss" to be offset against "net business income." "Net business loss" is not defined. However, "net business income" is defined to "consist of all the income attributable to the operation of a trade or business regularly carried on by the taxpayer . . . ."

To determine whether the loss incurred by the taxpayer is a "net business loss" under the statute, the meaning of that phrase must be determined. The department would determine the meaning of "net business loss" by analogy to the definition of "net business income" contained in the same statute. It argues that the definition, therefore, should be the loss "attributable to the operation of a trade or business regularly carried on by the taxpayer."

We are persuaded by the department's argument, and conclude that the definition advanced by it is appropriate. Clearly, "net business loss" is in some sense the reverse of "net business income." Where these terms are used in the same sentence and only one is defined, we conclude that the undefined term is appropriately defined as the negative of the first. Had the legislature intended that "net business loss" was to have another meaning, it could have said so, and undoubtedly would have, explicitly. We therefore conclude that "net business loss" means a loss attributable to the operation of a trade or business regularly carried on by the taxpayer.

We find unconvincing the argument of the taxpayer that any loss which was deductible under sec. 71.04, Stats., is also necessarily a net business loss. We do not find it necessary, however, to decide this case on the basis of the taxpayer's argument, for we are satisfied, within the statutory meaning advanced by the department—which meaning we accept—that the taxpayer is entitled to prevail.

The commission and the circuit court held that the loss in question is not a "net business loss," because the taxpayer is not in the business of buying and selling real estate, and therefore the loss does not result from a "trade or business regularly carried on by the taxpayer." While it might be relevant in approving a loss

carried forward to determine that a taxpayer sustaining a loss on the sale of real estate was in the real estate business, it is not necessarily relevant in an instance such as this. If a taxpayer were in the business of selling real estate and it sustained a loss as the result of a real estate transaction, under any definition or view of the statute, it would be entitled to carry forward the loss. But the fact that it was not in the business of regularly buying and selling real estate does not in itself prevent the carry forward of a loss under sec. 71.06, Stats.

In the instant case the taxpayer was not in the real estate business. It was operating an automobile sales and service agency, but, concededly for business purposes, it necessarily sold its real estate and holdings at a loss so it could continue the operation of its automobile business.

Selling real estate was not Hall's regular business, but the statute does not require that the particular transaction by which the loss was sustained must be a transaction regularly carried out in the usual course of business. The Department of Revenue, the Tax Appeals Commission, and the circuit court concluded that such interpretation was mandated by the statute. The circuit judge supported his conclusion by emphasizing the word, "regularly," in the portion of the statute, "attributable to the operation of a business *regularly* carried on by the taxpayer." We believe that emphasis on "regularly" is inappropriate to the plain and obvious meaning of the statute.

The statute is appropriately read not by emphasizing "regularly" but "attributable." The question is not whether the transaction was of a kind regularly carried on, but whether the transaction was *attributable* to the operation of a business which was regularly carried on. It is obvious that the loss must occur in the operation

of the taxpayer's regular business, but there is no intimation that the loss need result from a transaction of the kind in which the taxpayer regularly indulges.

We accordingly conclude that it is the taxpayer's position which is supported by the clear meaning of the statute and not the department's. In the instant case it is conceded that Hall was unable to operate at a profit at the pre-1970 location. It was the continued profitable operation of its automobile business, which it regularly carried on, that mandated the sale of the property, whether or not that sale resulted in a profit or loss. Because the business was operating unprofitably at its original site, the ongoing viability, and incidentally the taxability, of the business was dependent on disposing of its property holdings and moving to a different site. The transaction was clearly attributable to the continued operation of its regular business enterprise.

While federal cases and federal law, because of different terminology employed, are of no particular relevance in construing sec. 71.06, Stats., it should be noted that the federal cases denying loss carry-overs which define the operation of a business in the context of the Internal Revenue Code as referring to the day-to-day carrying-on of the business, as opposed to the sale of the property which had previously been used in the business, are not persuasive in the present context. For example, *Roberts v. Commissioner of Internal Revenue*, 258 F.2d 634 (5th Cir. 1958), held that the sale of the taxpayer's hotel did not constitute the operation of a business. However, the facts therein show that the taxpayer was engaged in the liquidation of his business.

All the federal cases which this court has examined where the federal courts have held that a sale of real estate or assets resulting in a loss were not business losses which could be carried over reveal facts showing that there was a total or partial liquidation of the bus-

iness, so that the business after the sale was either terminated or permanently reduced in scope. See, *Foreman v. Harrison,* 79 F. Supp. 987 (N.D. Ill. 1948) (termination of manufacturing activity); *Lazier v. United States,* 170 F.2d 521 (8th Cir. 1948) (partial liquidation); *Mae E. Townend v. Commissioner of Internal Revenue,* 27 T.C. 99 (1956) (partial liquidation); *Joseph Sic v. Commissioner of Internal Revenue,* 10 T.C. 1096 (1948), *aff'd,* 177 F.2d 469 (8th Cir. 1949), *cert. denied,* 339 U.S. 913 (1950) (partial liquidation); *Hartwig N. Baruch v. Commissioner of Internal Revenue,* 11 T.C. 96 (1948), *aff'd,* 178 F.2d 402 (2nd Cir. 1949) (total liquidation).

In the instant case, the taxpayer did not liquidate any part of his business, because the land and buildings were sold only to be replaced by new land and new buildings in another location. It was stipulated by the parties that the proceeds of the sale were continued in the use of the business. One asset was replaced by the other in the framework of an ongoing and undiminished business. It is difficult to see even an arguable rationale, under the facts or the plain meaning of the statute, that this was not a loss attributable to a transaction—albeit an unusual one—in the course of the taxpayer's regular business.

We have stated earlier that the *Wald* case has no precedential value, because it recites nothing but a result with no analytical justification. It should be pointed out, moreover, that the stipulated facts in *Wald* show that the taxpayer did not attempt to attribute the sales therein to any compelling business reasons. Moreover, there is nothing to show that the taxpayer replaced the assets from which he derived income. Thus, under *Wald,* as the facts appear in the decision, at least a partial liquidation took place with respect to the taxpayer's business. The *Wald* decision, unreasoned as it is, may have reached a correct result, but it is applicable

to the instant case on neither the facts nor the law as we view them.

Much more persuasive is an opinion of the Board of Tax Appeals issued in 1948. *Alex P. Jordan v. Department of Taxation,* 4 WBTA 11 (1948). The Department of Revenue has neglected to cite this case. In *Jordan,* the petitioner was in the business of operating and letting apartments and rooming houses. He was obliged to sell a portion of his property in order to obtain the funds necessary to avert a foreclosure on his entire business. He was obliged to sustain a loss to protect the ongoing operation of his business, even as did Hall Chevrolet in the instant case. The persuasive rationale of the Board of Tax Appeals in that case speaks for itself:

"Petitioner sustained a loss on the sale of real estate which he used in connection with his business of operating combination apartment and rooming houses. The operation of the rooming houses, admittedly, was the business regularly carried on by him; accordingly, it must be ascertained whether, under a realistic application of section 71.06, consistent with the acknowledged purposes for its enactment, the loss on the sale of that real estate was attributable to petitioner's regular trade or business. Attributable is defined generally as ascribable, traceable or accountable to. In the appeal at bar, the loss on the sale of the 615 Howard Place property was *directly traceable* to petitioner's operation of combination apartment and rooming houses. Petitioner conclusively established that it was necessary for him to sell the property at 615 Howard Place so as to save his other business property and thereby continue his rooming house operations. Clearly his ownership of the property at 615 Howard Place was interwoven with his regular trade or business and the disposition of that real estate was ascribable to his regular business operations." (at 14) [2]

---

[2] We should point out that *Alex P. Jordan v. Wisconsin Department of Taxation* is perhaps of questionable precedential value when viewed from the aspect of *stare decisis.* Although that

We believe that the appropriate law pertinent to the facts in the instant case is well set forth in *Jordan*. The plain reading of the statute, together with the careful logic of *Jordan*, leads us to the conclusion that Hall Chevrolet was entitled to carry forward the losses claimed under sec. 71.06, Stats., and is entitled to the abatement of the taxes.

We conclude that "net business loss' means loss attributable to the operation of a trade or business regularly carried on by the taxpayer. The loss by virtue of the real estate transaction in this case was attributable to the operation of Hall Chevrolet's regular car-dealership business, because it was made for compelling business reasons and it made possible, without reduction in the scope of the business, the ongoing operation of the dealership.

*By the Court.*—Judgment reversed, and cause remanded to the circuit court for further proceedings consistent with this opinion.

---

case was decided in 1948 and appears in the volume of Tax Appeals Reports published in 1962 by the Commerce Clearing House, a review of the file now deposited in the archives of the State Historical Society shows that, for inexplicable reasons, the parties on May 18, 1951, entered into a stipulation to reverse the order of the Wisconsin Board of Tax Appeals. A judgment of reversal was entered by the circuit court on that same date, and on June 26, 1951, the Wisconsin Board of Tax Appeals reversed the order embodied in the opinion cited at 4 WBTA 11. We conclude, however, that the language embodied in that opinion is nonetheless persuasive, and we rely upon it for that reason.