MIDLAND FINANCIAL CORPORATION,
Petitioner-Respondent,

v.

WISCONSIN DEPARTMENT OF REVENUE, Appellant.†

Court of Appeals

*No. 82–396. Submitted on briefs October 13, 1982.—*
*Decided December 7, 1982.*
(Also reported in 328 N.W.2d 866.)

† Petition to review granted.

For the appellant the cause was submitted on the briefs of *Bronson C. La Follette,* attorney general, and *John C. Murphy,* assistant attorney general, with assistance from *Roxanne Roslak,* law clerk.

For the petitioner-respondent the cause was submitted on the brief of *Gerald S. Walsh* and *David H. Hutchinson* of *Walsh and Nohr,* of Milwaukee.

Before Decker, C.J., Moser, P.J. and Wedemeyer, J.

WEDEMEYER, J.   This is an appeal from a judgment of the circuit court reversing a decision and order of the Wisconsin Tax Appeals Commission which affirmed a decision of the Wisconsin Department of Revenue assessing additional corporate franchise taxes to Midland Financial Corporation.   We affirm the circuit court in all respects.

## FACTUAL BACKGROUND

The relevant, undisputed factual background reveals the following: During the years 1971 and 1972, Midland

Financial Corporation (Midland), a Wisconsin corporation, operated as a bank holding company. It owned a controlling interest in Midland National Bank, Park State Bank, Midtown State Bank, and Citizens State Bank and Trust Company through an ownership interest in Wausau Financial Corporation. Midland owned two small office buildings, one of which was leased in part to the Midland National Bank. In addition, it controlled Midland Leasing Services, Inc. and Equity Management Associates, Inc.

In 1971, Midland received $112,633 of dividend income from its subsidiary corporations which it included as gross income in its state of Wisconsin corporate income tax return. Pursuant to sec. 71.04 (4), Stats., it deducted that dividend income from its gross income. Midland then reported a net loss of $156,534 in its 1971 income tax return. It carried forward this loss to 1972 and used it as a deduction in its 1972 corporate income tax return.

The appellant, Wisconsin Department of Revenue (Department), audited Midland's tax returns in September of 1976. As a result of the audit, the Department offset the 1971 loss of $156,534 by $112,633 of dividend income received in that year. In so doing, it cited sec. 71.06, Stats. (1971) as authority. This section provides that a net business loss can be carried forward to the following year "to the extent not offset by other items of income of the same year." The Department characterized the dividends received by Midland as "other items of income." The result of this offset reduced the amount of the loss carry forward to $43,901. This adjusted loss carryover was subtracted from Midland's 1972 business income of $94,741, causing Midland to have a taxable income in 1972 of $50,843 [sic]. Midland filed for redetermination of the 1972 assessment which the Department denied. In January of 1977, Midland petitioned the Wisconsin Tax Appeals Commission (Commission) for review. On November 20, 1980, the Commission affirmed the De-

partment's decision. In January of 1978, Midland was liquidated and dissolved. In December of 1980, Midland, under its corporate name, brought an action under ch 227, Stats., for the circuit court to review the decision of the Commission affirming the Department. The circuit court reversed the decision of the Commission, holding that the dividends in question were not "other items of income" for the purposes of sec. 71.06, and, therefore, should not have been used to offset the net business loss for 1971.

With this factual setting, we are presented with three issues:

1. Did Midland lack capacity to sue;
2. Is there the required "aggrieved" party present; and
3. What is the proper application of sec. 71.06, Stats., to the undisputed facts?

We shall consider the first two issues together and then examine issue number three.

## ISSUES I and II

Section 180.787, Stats.[1] is a corporate survival statute. This type of statute is of remedial nature and is to be

---

[1] Section 180.787, Stats., provides:

The dissolution of a corporation shall not take away or impair any remedy available to or against such corporation, its directors, officers or shareholders, for any right or claim existing or any liability incurred, prior to such dissolution if action or other proceeding thereon is commenced within 2 years after the date of such dissolution, . . . . Any such action or proceeding by or against the corporation may be prosecuted or defended by the corporation in its corporate name, . . . . The shareholders, directors and officers may take such corporate or other action as is appropriate to protect such remedy, right or claim. If such corporation was dissolved by the expiration of its period of dura-

liberally construed.[2] This statute provides that no remedy will be impaired relating to any corporate right or claim existing prior to the dissolution of a corporation if any action or other proceeding relating thereto is initiated within two years after the date of corporate dissolution. It further provides that if certain conditions are fulfilled, such proceedings may be pursued by the corporation in its corporate name after dissolution. Midland was dissolved in January of 1978. On January 3, 1977, Midland appealed the Department's redetermination of its corporate franchise tax by filing a petition with the Commission, thereby meeting the prerequisites of survival. When Midland filed the petition for circuit court review, Midland was not commencing an action in the circuit court, but was continuing administrative proceedings and instituting judicial review of the Commission's findings, pursuant to sec. 73.015, Stats. Thus, Midland retained the capacity to sue. *See* sec. 180.787.

The Commission is an independent tribunal exercising a quasi-judicial function.[3] It is, in effect, a state tax court.[4] As defined by sec. 73.01, Stats., and its subsections, it conducts proceedings, and these proceedings are of such a nature as to be included within the phrase, "other proceeding," as stated in sec. 180.787, Stats.

Here the decision of the Commission adversely affected Midland's valuable corporate right of carrying forward its business loss deduction, a remedy for which right survived pursuant to sec. 180.787, Stats. Therefore, Mid-

---

tion, such corporation may amend its articles of incorporation at any time during such period of 2 years so as to extend its period of duration.

[2] 16A W. Fletcher, *Cyclopedia of the Law of Private Corporations* § 8143 (rev. perm. ed. 1979).

[3] *Sawejka v. Morgan*, 56 Wis. 2d 70, 76, 201 N.W.2d 528, 531 (1972).

[4] 49 Wis. Bar Bull. J48, J49-51 (1976).

land is an aggrieved party under sec. 227.01(8), Stats.[5] We further conclude that the filing of the petition by Midland initiated the "other proceedings" as required by the survival statute.

## ISSUE III

The third issue presented is whether this court should construe sec. 71.06, Stats., (1971)[6] to include the intercorporate dividends Midland received in 1971 as "other items of income" for the purpose of offsetting the net business loss to be carried over to the 1972 tax year. In addressing this problem we must also take into account the provisions of sec. 71.04(4), Stats., and shall do so later in this opinion.

At the outset, it is important to observe that when the Department and a taxpayer cannot agree on the proper application of a specific statute, there are certain applic-

---

[5] Section 227.01, Stats., provides:

In this chapter:

(1) "Agency" means any board, commission, committee, department or officer in the state of government, except the governor or any military or judicial officer of this state.

. . . .

(8) A "person aggrieved" includes any person or agency whose substantial interests are adversely affected by a determination of an agency.

[6] Section 71.06, Stats., provides, in part:

If a corporation in any year sustains a net business loss, such loss, to the extent not offset by other items of income of the same year, may be offset against the net business income of the subsequent year and, if not completely offset by the net business income of such year, the remainder of such net business loss may be offset against the net business income of the following year. For the purposes of this section, net business income shall consist of all the income attributable to the operation of a trade or business regularly carried on by the taxpayer, less the deduction of business expenses allowed in s. 71.04.

able rules of construction.[7] Unless a statute is unclear or ambiguous, legislative intent must be found by giving the language its ordinary and accepted meaning.[8] When a court is considering the application of a tax deduction provision, strict construction must be employed.[9] Deductions will be allowed when granted by clear language. Where clear language and policy support a deduction, it will not be denied under the general rule of strict construction.[10]

Before the circuit court, Midland successfully demonstrated that the dividend income which it received was business income. The Department, on the other hand, has maintained that the nature and quality of the dividend was not business income, but one of "other items of income."

We believe that sec. 71.06, Stats., is ambiguous because it is capable of being understood by reasonable persons in two ways.

It is prudent to observe that since only questions of law are presented, we may review the record *ab initio* and substitute our judgment for that of the Commission.[11]

We view this situation from the perspective of "substance versus form,"[12] and a complete review of the

---

[7] *Transamerica Financial Corp. v. Department of Revenue*, 56 Wis. 2d 57, 64–65, 201 N.W.2d 552, 555 (1972).

[8] *Id.* at 64, 201 N.W.2d at 555.

[9] *Cf.* 1 J. Mertens, *Law of Federal Income Taxation* § 3.08 (rev. ed. 1981).

[10] *Id; see National Amusement Co. v. Department of Revenue*, 41 Wis. 2d 261, 267, 163 N.W.2d 625, 628 (1969).

[11] *Hall Chevrolet Co. v. Department of Revenue*, 81 Wis. 2d 477, 483, 260 N.W.2d 706, 709 (1978).

[12] *Cf.* 1 J. Mertens, *Law of Federal Income Taxation* § 3.04 n. 26 (rev. ed. 1981).

record requires us to conclude that, owing to the special nature of Midland's normal business activities, the receipt of dividend income was very much a part of Midland's expected normal business revenue, regardless of how successful the corporation might be in a given year or what percentage of gross revenue such receipts might occupy. Therefore, the circuit court was correct in concluding that the dividend income was business income.

The Department urges us to examine the following considerations: (1) The legislative history of sec. 71.06, Stats.; (2) its judicial and administrative construction; and (3) the propriety of interpreting the statute consistent with the economic loss approach to a loss carry forward. We accept the invitation to follow this path of inquiry, but with this forewarning: that we shall not blindly follow a proposed interpretation for which we conclude there is no rational basis.

Section 71.045, Stats., the precursor to sec. 71.06, Stats. (1971), was enacted in 1931. It was not until 1935 that the clause, "to the extent not offset by other items of income of the same year," now the focal point of our attention, was added by way of amendment.[13] It is reasonable to conclude that the added language was intended to either correct a scrivener's error or eliminate a loophole. In retrospect, however, the nature of either reason is difficult to glean.

A historical review of an older federal counterpart to sec. 71.06, while quite enlightening, demonstrates little

---

[13] Compare sec. 71.045 (1931), Stats: "If a taxpayer in any year subsequent to the year, 1932, sustains a net business loss, such loss may be offset against the net business income of the subsequent year . . ." with sec. 71.045 (1935), Stats: "If a taxpayer in any year subsequent to the year 1932, sustains a net business loss, such loss, *to the extent not offset by other items of income of the same year,* may be offset against the net business income . . . (emphasis added)."

consistency from which one may draw comforting conclusions.[14] The first federal net operating loss provision was enacted in sec. 204 of the Revenue Act of 1918. It specifically disallowed using the intercorporate dividend deduction permitted in sec. 234(a)(6) in computing a loss carry forward. Substantially the same section was reenacted in the 1921, 1924, 1926, 1928, and 1932 Revenue Acts. The National Recovery Act of 1933, effective January 1, 1934, eliminated the net loss carry forward provision altogether. The provision reappeared in the Revenue Act of 1939.[15] In 1954, all restrictions on the use of the intercorporate dividend deduction were eliminated from net operating loss carry forward considerations. In contrast to the Wisconsin loss carryover provision, the federal net operating loss provision, from its inception to 1954, expressly prohibited the use of the dividend deduction in computing the loss carryover. No express restrictions have ever existed in the Wisconsin Revenue Statute.

Tax analysts and encyclopedists, attempting to mollify the harsh results of arbitrary year-to-year accounting cycles, developed formulae to provide hoped-for consistency in either the contraction or expansion of the net loss carry forward concept.[16] Essentially these approaches

---

[14] 5. J. Mertens, *Law of Federal Income Taxation* § 29.01 (rev. ed. 1981). The number of years that the net loss, however defined, could either be carried back and/or carried forward varied and in most instances related directly to the state of the economy, including wartime circumstances.

[15] *Roberts v. Commissioner*, 258 F.2d 634 (5th Cir. 1958).

[16] *Cf.* J. Mertens, *supra* note 9; *Lisbon Shops v. Koehler*, 353 U.S. 382, 386–87 (1957):

Those provisions were enacted to ameliorate the unduly drastic consequences of taxing income strictly on an annual basis. They were designed to permit a taxpayer to setoff its lean years against its lush years, and to strike something like an average taxable income computed over a period longer than one year. . . . What history there is suggests that Congress primarily was concerned

can be denominated as the economic loss theory and the taxable loss theory.[17] Regrettably, however, there is little historical data available in legislative committee reports or case law to justify a preference for one theory or to warrant judicial or administrative interference with clearly defined public policy enunciated by legislative bodies.

The Department calls our attention to the following cases: *General Securities Corp. v. Commissioner of Internal Revenue,* 23 Board of Tax Appeals 130 (1931); *Red Star Yeast and Products Co. v. Wisconsin Department of Taxation,* 2 Wisconsin Board of Tax Appeals 17 (1943); *Bowman Dairy Co. v. Tax Commission,* 240 Wis. 1, 1 N.W.2d 905 (1942); and *Alumatic Corp. v. Wisconsin Department of Revenue,* 10 Wisconsin Tax Appeals Commission 93 (1975). In so doing, the Department argues that the abovementioned cases show: (1) that the 1935 amendment to sec. 71.045, Stats., was an attempt to accomplish on the state level what the *General Securities* accomplished on the federal level; and (2) the economic loss approach was the basis for the amendment.

To trace these thin threads of logic is well-nigh impossible, and we conclude inapposite for the following reasons:

When *General Securities* was decided, the Internal Revenue Code in quite specific language excluded the use of the deductible dividends from the computation of the net loss carry forward. The loss that was under consideration in *General Securities* just happened to be the actual loss. We do not believe that the *General Securities* case is a foundation case for the propagation of the economic loss theory. The very specific language of the

with the fluctuating income of a single business. [Footnotes omitted]

[17] *Cf.* Mertens, *supra* note 9.

Revenue Code used to support the decision has no similarity to the language in the amendment of our statute.

*Red Star Yeast* addressed the issue of how to handle tax exempt income when computing the net operating loss forward. Unlike *General Securities* and unlike our present fact situation, the income considered in *Red Star Yeast* was never included in the gross income computation, and we believe properly added back as "other items of income" when determining the loss carryover, because it was not attributed to normal business activities.

It is interesting to note that *Red Star Yeast* contains the following language:

> When the legislature enacted the provisions of section 71.045, it provided for a deduction of a net business loss but it impressed upon the right to the deduction the qualification that such loss was to be reduced by other items of income of the same year before it could be used as an offset against net business income of a "subsequent" or "following year." It was as clearly within the legislature's province to limit the bounds of this type of deduction as it was for it to create the deduction in the first place.[18]

Contrary to the opinion in *Red Star Yeast,* sec. 71.045, Stats., does not "evidence convincingly a legislative intent to require a taxpayer to reduce his net business loss by *all* items of income."[19]

The *Alumatic* case involved a factual setting similar to our present case. The Commission in *Alumatic* entirely overlooked the *Red Star Yeast* decision in reaching its result. Instead it relied upon the *Bowman Dairy* case for its rationale.

In *Bowman Dairy,* the amount of the carryover deduction was never in controversy. It was never analyzed. Instead the deduction was stipulated as proper. The

[18] *Red Star Yeast and Products Co. v. Wisconsin Dep't of Taxation,* 2 Wis. B.T.A. 17, 20 (1943).
[19] *Id.*

basis for sec. 71.045 (predecessor to 71.06) was in fact, never considered. Therefore, *Alumatic* is not dispositive of the present case.

It thus becomes abundantly clear that the cases that are offered as the argumentative wellspring for the Department's proposed interpretation of sec. 71.06 are of minuscule significance.

The distinction between the economic loss theory and the tax accounting loss theory is reasonable to be sure. To suggest, however, that this dichotomy and its attendant analysis was perceived, contemplated, or intended in the history and development of the Wisconsin tax law is a conclusion for which we can find no convincing evidence.

In reaching our conclusion regarding the appropriate application of sec. 71.06, we cannot overlook the existence of sec. 71.04(4).[20] A reading of this section and

---

[20] Section 71.04, Stats., provides:

Every corporation, joint stock company or association shall be allowed to make from its gross income the following deductions:

(4) (a) Dividends, except stock dividends not taxable under s. 71.305, received from any corporation conforming to all of the requirements of this subsection. The corporation must have filed income tax returns as required by law, the income of the corporation must have been subject to the income tax law of this state, . . . . The principal business of the corporation must be attributable to Wisconsin, and for the purpose of this subsection any corporation shall be considered as having its principal business attributable to Wisconsin only if 50% or more of the entire net income or loss of the corporation after adjustment for tax purposes (for the year preceding the payment of the dividends) was used in computing the taxable income under ch. 71.

If the net incomes of several affiliated corporations have been combined for the purpose of determining the amount of income subject to taxation under the statutes, the location of the principal business of such group shall determine the taxable status of dividends paid, but intercompany dividends passing between affiliated

its statutory forebears clearly indicates that the legislature as a matter of public policy intended to give preferred treatment to intercorporate dividends of qualifying Wisconsin corporations. We cannot find any expression of limitation on this policy.

If the desired application of 71.06 is to alter the benefits bestowed by 71.04(4), it is far better that this message come by a clear and direct act of the legislature rather than an indirect ruling of an administrative tribunal. In federal law the restriction on the use of the dividends exclusion was always clearly stated.

When faced with the unequivocal directive of sec. 71.04 (4), we conclude that the *post hoc, ergo propter hoc* economic rationale as proposed by the Department leaves much to be desired both from a historical viewpoint and consistency in application. To allow the Department through attenuated reasoning to conclude that these dividend deductions are to be added back when computing the net loss carryover without express statutory authority provided is administrative grasping contrary to public policy.

We believe it is far more important to acknowledge the legislature's full authority to create tax benefits and be assured of the continued integrity of these benefits regardless of how arbitrary they may be and regardless of what windfall benefits they may bestow. We disapprove frustrating the legislature's public policy function indirectly by administrative fiat. A more fundamental consistency is realized in the former course of action than the latter. The thrust of sec. 71.06, Stats., is to permit a net business loss, based upon legislatively authorized deductions, to be offset against the net business income of the subsequent year without being offset by other income regularly generated from the business.

corporations whose incomes are included in the taxable income of the group shall not be assessed as group income.

## CONCLUSION

An administrative decision is sufficient if the findings of fact and conclusions of law are specific enough to inform the parties and the court on appeal of the basis of the decision.[21] We note the circuit court in its review adjudged that the record is void of any rational justification. The Department's protestation notwithstanding, we concur for all of the reasons above stated.

*By the Court.*—Judgment affirmed.

---

[21] *State ex rel. Harris v. Annuity & Pension Bd.,* 87 Wis. 2d 646, 661, 275 N.W.2d 668, 675 (1979).
† Petition to review granted.