RECHT-GOLDIN-SIEGAL CONSTRUCTION, INC., Appellant, v. DEPARTMENT OF REVENUE, Respondent.

*No. 79. Argued June 3, 1974.—Decided June 28, 1974.*
(Also reported in 219 N. W. 2d 379.)

304

For the appellant there were briefs by *Brady, Tyrrell, Cotter & Cutler,* attorneys, and *Samuel J. Recht* and *Thomas J. Donnelly* of counsel, all of Milwaukee, and oral argument by *Mr. Recht.*

For the respondent the cause was argued by *Allan P. Hubbard,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

WILKIE, J.   The only issue involved on this appeal is: Are carpeting and draperies, purchased for use in rental apartments, subject to the selective retail sales and use tax, secs. 77.52 and 77.53, Stats. 1967?

In two recent cases, this court has construed provisions of the selective sales tax statutes.  In these cases

this court summarized the rules of construction to be applied in interpreting the provisions of the statute.

". . . '. . . While it is to be conceded that if there is any ambiguity in a taxing statute, any doubt shall be resolved in favor of the taxpayer, *Wadhams Oil Co. v. State* (1933), 210 Wis. 448, 460, 246 N. W. 689, a court is not to search for doubt in an endeavor to defeat an obvious legislative intention.' " [1]

However, when statutory language is clear and unambiguous,

" '. . . no judicial rule of construction is permitted, and the court must arrive at the intention of the legislature by giving the language its ordinary and accepted meaning.' . . ." [2]

Therefore, as stated by this court in *National Amusement Co. v. Department of Revenue*,[3] the ultimate result in the case turns upon whether the statute is ambiguous and doubtful. This court has consistently used the same test for ambiguity:

" 'A statute or portion thereof is ambiguous when it is capable of being understood by reasonably well-informed persons in either of two or more senses.' *State ex rel. Neelen v. Lucas* (1964), 24 Wis. 2d 262, 267, 128 N. W. 2d 425, citing *State ex rel. West Allis v. Dieringer* (1957), 275 Wis. 208, 218, 81 N. W. 2d 533." [4]

However, when a case comes before this court it is obvious that people disagree as to the meaning to be given to a statute. This is not controlling. The court must determine whether "well-informed persons" *could have* become confused.

[1] *Telemark Co. v. Department of Taxation* (1965), 28 Wis. 2d 637, 640, 137 N. W. 2d 407.

[2] *National Amusement Co. v. Department of Revenue* (1969), 41 Wis. 2d 261, 266, 163 N. W. 2d 625.

[3] *Id.* at page 267.

[4] *Id.*

Since the case was submitted on stipulated facts, the issues decided by the tax appeals commission and the circuit court for Dane county were questions of law. In considering such questions this court does not give any special weight to the trial court's conclusions.[5]

Sec. 77.52 (1) (a) 9, Stats. 1967, provided that the selective sales tax applied to the sale, lease or rental of:

"9. Household furniture, furnishings, floor coverings, major and small appliances, power tools, outdoor garden and lawn equipment and tools; office furniture, furnishings, equipment, machines, appliances and floor coverings; commercial food service machines and equipment; tavern, restaurant, fountain and store furniture, furnishings, equipment, machines, appliances and floor coverings; except that tanks, pumps, compressors and equipment for retail marketing of petroleum products are exempt from tax under this subchapter; . . ."

Sec. 77.53 (1) provided that an excise tax was levied and imposed on the storage, use or other consumption in this state of the taxable tangible personal property described in sec. 77.52 purchased from any retailer for storage, use or other consumption within this state. A retailer was defined, as pertinent here, for purposes of the selective sales and use tax as:[6]

"(a) Every seller who makes any retail sale of taxable tangible personal property, and every person engaged in the business of making retail sales at auction of taxable tangible personal property owned by the person or others.

"(b) Every person engaged in the business of making sales of taxable tangible personal property for storage, use or consumption or in the business of making sales at auction of taxable tangible personal property owned by the person or others for storage, use or other consumption."

---

[5] *Id.* at page 266.

[6] Sec. 77.51 (7) (a), (b), Stats. 1967.

The appellant first argues that the statutory language and structure clearly are inapplicable to carpet and draperies used by the purchaser in rental apartment units. The appellant argues that subdivision 9 contains four categories—household, office, commercial, and tavern, restaurant, fountain and store. Since the only item preceded by the adjective "commercial" is food service machines and equipment, the appellant argues that its "commercial" draperies and floor coverings are not within the purview of the statute. However, as pointed out by the circuit court, office, tavern, restaurant and store items are "commercial" property also. The statute does not clearly create a category for exclusively "commercial" property only. In order to sustain the appellant's analysis one would have to assume that the "household" category refers only to items used in the taxpayer's personal household. However, this begs the real question—whether the term "household" is a generic adjective applying to the listed items whether they are used by the taxpayer for his own household or used by him in rental apartments leased by him for income purposes.

The appellant also points out that, in order to be subject to a use tax, the property must be sold by a retailer as defined in sec. 77.51, Stats. 1967. The selective sales and use tax statutes were amended in 1969. By ch. 154, sec. 217 of the Laws of 1969, subch. III of ch. 77 was changed to a "general" sales and use tax. There were extensive changes in the language of the statutes involved in this appeal. The definition of "retailer" in sec. 77.51 was amended to read:

"(a) Every seller who makes any sale of tangible personal property or taxable service.

"(am) Any person making any retail sale of a motor vehicle, aircraft or boat registered, or required to be registered, under the laws of this state.

"(b) Every person engaged in the business of making sales of tangible personal property for storage, use or

consumption or in the business of making sales at auction of tangible personal property owned by the person or others for storage, use or other consumption.

"(n) A person selling household furniture, furnishings, equipment, appliances or other items of tangible personal property to a landlord for use by tenants in leased or rented living quarters."

The appellant argues that because the 1969 amendment added sec. 77.51 (7) (n), which specifically includes persons selling household furnishings to landlords for use by tenants in the definition of "retailer," these persons were not "retailers" under the 1967 statute. The appellant cites several cases in support of the principle that where an amendment adds language to a statute it is presumed that the legislature intended to include what was previously omitted.[7]

Sutherland in his treatise on statutory construction acknowledges this presumption.

"The courts have declared that the mere fact that the legislature enacts an amendment indicates that it thereby intended to change the original act by creating a new right or withdrawing an existing one. Therefore, any material change in the language of the original act is presumed to indicate a change in legal rights. . . ."[8]

However, Sutherland goes on to explain:

"Although a presumption of change in legal rights is probably reasonable in that an amendment is more frequently used to add or take a provision from a law than to interpret it, the fact of amendment by itself does not indicate whether the change is of substance or form— whether a right is added to or taken from the original act, or whether a provision in the original act is merely

---

[7] *Green Bay Drop Forge Co. v. Industrial Comm.* (1953), 265 Wis. 38, 60 N. W. 2d 409, 61 N. W. 2d 847; *Estate of Nottingham* (1970), 46 Wis. 2d 580, 590, 175 N. W. 2d 640.

[8] 1A Sands, Sutherland, *Statutory Construction* (4th ed. 1972), p. 178, sec. 22.30.

being interpreted, that is, made more detailed and specific. To determine this the circumstances surrounding the enactment must be looked to. If they indicate that the legislature intended to interpret the original act, the presumption is rebutted. An amendment of an unambiguous statute indicates a purpose to change the law, whereas no such purpose is indicated by the mere fact of an amendment of an ambiguous provision." [9]

In *Prudential Building & Loan Asso. v. City of Louisville* [10] the Court of Appeals of Kentucky indicated that where numerous changes are made in a prior statute, any particular change is not so indicative of the specific legislative purpose of the amendment as would be the case if it had been the only change. In this case extensive changes were made in the statutes in question to transform the statutes from a selective to a general sales and use tax structure. The specific mention of sellers of household furnishings to landlords was not an isolated and singular change in the statute. Therefore the presumption which normally would attach to an amendment is considerably weakened by virtue of its inclusion in a general revision of the entire statutory structure of the selective sales and use tax subchapter.

"Retailer" was always defined in the broadest terms in both the 1967 statute and the present statute. A "retailer" under both statutes includes every seller who makes any sale of taxable tangible property. Thus any further enumeration of specific persons who are included within the definition of "retailer" must serve the purpose of making the statute more detailed and specific and removing all doubt as to its coverage. If the additional subsections were not enumerated they would certainly still be covered under the general broad definition of "retailer" if they were sellers of goods subject to taxation under the statutes. We conclude, therefore, from the

[9] *Id.* at page 179.
[10] (Ky. 1971), 464 S. W. 2d 625, 626.

structure of the act and the extensiveness of the revision involved that the presumption that sec. 77.51 (7) (n) of the new general sales and use tax subchapter indicates that such sellers were not "retailers" under the prior selective sales and use tax statutes is rebutted. This argument based on the 1969 amendment of subch. III of ch. 77 of the Wisconsin statutes does not support the appellant's claim that it is not subject to taxation under the 1967 statutes.

The appellant contends that the words in a statute should be given their ordinary and accepted meaning. Of course. However, we disagree with the appellant's statement that the ordinary and accepted meaning of the words "household" and "commercial" has been established by this court in its decision in *Estate of Bosse.*[11] In that case this court was called upon to interpret an inheritance statute which allowed a widow the household furniture of the deceased. In that case it was argued that furniture in a summer home never used by the widow could not be claimed under the statute. This court determined that the statute did not make the right of the widow depend on her use of the property. This court said:

"It must be conceded that the articles in question are articles of household furniture—chairs, tables, beds, dishes, etc. The statute is clear and definite. No conditions are attached. The only limitation is in the language 'the household furniture' of the deceased. 'Household,' as used herein, would appear to limit and qualify 'furniture' in that it would describe furniture used by the deceased for his convenience and comfort; in other words, 'household furniture' negatives furniture owned and used for commercial purposes. It is not contended that the furniture in question was used by anyone but the deceased. It was owned by him and used for his convenience and comfort. . . ."[12]

[11] (1945), 247 Wis. 44, 18 N. W. 2d 335.
[12] *Id.* at page 47.

Although *Bosse* may appear to make a broad definition of "household furniture," we think it must be read as an interpretation of the meaning of "household furniture of the deceased" within the particular statute in question. The policy behind the widow's allowance in this statute was to enable the widow to keep the furnishings of her and her husband's personal household. The policy of allowing the widow to maintain her residence relatively unchanged by the death of her spouse would not be served by giving an expansive interpretation to household furniture to include furniture used by the decedent in rental properties. This court concluded that the intent of the legislature was to allow the widow to retain only those household furnishings which were actually used by the decedent for his "convenience and comfort." However, *Bosse* certainly does not dictate that the term "household furniture" in another taxing statute must invariably refer only to furniture used by the taxpayer for his "convenience and comfort." As pointed out by the trial court in its decision, the selective sales tax statute was phrased in terms of categories of items and not in terms of the use made of them by the taxpayer-purchaser. There are no policy reasons here, such as were present in the *Bosse Case,* to indicate any intention of the legislature to tax only household furniture purchased for use in the taxpayer's own household.

The appellant also relies on the case of *Allen v. Multnomah County* [13] to support its contention that the words "household furniture" cannot be applied to furniture used for commercial purposes rather than in the personal household of the purchaser. The *Multnomah County Case* involved an exemption statute which excluded from taxation "all household furniture, domestic fixtures, household goods and effects actually in use as such in homes and dwellings; also all wearing apparel,

[13] (1946), 179 Ore. 548, 173 Pac. 2d 475.

watches, jewelry and similar personal effects actually in use." The plaintiff in the case was an owner of an apartment house who sought to enjoin the taxation of certain household furniture owned by him and in use by his tenants. The Supreme Court of Oregon determined that "[t]he use of rented furniture by a tenant does not, in our opinion, make such furniture 'household furniture' within the meaning of the statute." [14] It must be remembered that the rules of construction applied to tax exemption statutes require the courts to carefully scrutinize all claims of exemption and to approve only such claims as fall within a specific legislative grant of exemption based upon sound public policy. The Oregon court acknowledged that in popular understanding "household furniture" means that type which is devoted to domestic uses and that in that sense a literal interpretation of the words of the statute would appear to include the furniture of the plaintiff used in his apartment house. However, the court then stated:

"When the legislative intent has been ascertained, it should be given effect, even although, in doing so, the literal meaning of the words used is not followed." [15]

It is clear that the Oregon court was not saying that the term "household furniture" could never be applied to that placed by the owner in rental units for use by tenants, but that a literal and broad interpretation in the context of this particular exemption statute would lead to absurd results contrary to the legislative policy behind these particular exemptions. The court found that the policy of the legislature was to exempt the household property actually used by the taxpayer in his own household, thus placing all households in an equal position. The court determined this policy would not be served by subsidizing the property of the plaintiff which was being used by him to produce income. The court found that the

[14] *Id.* at page 554.
[15] *Id.*

exemption in question was a personal exemption of the taxpayer and not directed in favor of a class of property.

Thus, neither *Bosse* nor *Multnomah County* control the present question. Each case determined the meaning of the words "household furniture" in the context of particular statutes. The words of sec. 77.52 (1) (a) 9, Stats. 1967, "household furniture, furnishings, floor coverings," etc., are not ambiguous. There is no indication whatsoever that giving a literal interpretation to the words violates any policy of the legislature nor does the application of the tax to the draperies and carpeting involved in this case violate the plain and ordinary meaning of the words "household furnishings," for the items of property involved are being used for domestic purposes by the tenants of the appellant.

*By the Court.*—Judgment affirmed.