[Case No. 83–733.]

CITY OF LA CROSSE, a municipal corporation,
Petitioner-Respondent,

v.

Wisconsin DEPARTMENT OF NATURAL RESOURCES,
Appellant.

[Case No. 83–734.]

CITY OF LA CROSSE, a municipal corporation,
Plaintiff-Respondent,

v.

Wisconsin DEPARTMENT OF NATURAL RESOURCES,
Defendant-Appellant.

[Case No. 83–735.]

Harold SWANSON, Sr., Harold Swanson, Jr., Robert L.
Swanson, and Gary B. Swanson, d/b/a Reel Enter-
prises, Petitioners-Respondents,

v.

Wisconsin DEPARTMENT OF NATURAL RESOURCES,
Appellant.†

Court of Appeals

*Nos. 83–733, 83–734, 83–735. Submitted on briefs June 4, 1984.—
Decided June 26, 1984.*
(Also reported in 353 N.W.2d 68.)

† Petition to review denied.

170

For the appellant the cause was submitted on the briefs of *Bronson C. La Follette,* attorney general, and *Thomas L. Dosch,* assistant attorney general.

For the petitioner-respondent, City of La Crosse, the cause was submitted on the brief of *Patrick J. Houlihan* and *David L. Lange,* of La Crosse.

For the petitioners-respondents, Swanson, et al., the cause was submitted on the brief of *James G. Curtis* and *Hale, Skemp, Hanson & Skemp,* of La Crosse.

Before Gartzke, P.J., Bablitch, J. and Dykman, J.

DYKMAN, J. The Department of Natural Resources appeals a judgment which set aside DNR's disapproval of a flood plain zoning ordinance enacted by the City of La Crosse and ordered DNR to approve the ordinance.[1] The trial court erroneously placed the burden of proof upon DNR to show that the ordinance did not meet statutory and regulatory criteria for approval, rather than upon La Crosse to show that DNR's decision did not meet the standards of ch. 227, Stats. Because DNR was not required to approve the ordinance, we reverse the judgment.

Land use on flood plains is regulated jointly by local governments and DNR, with the municipalities having the first opportunity to regulate local land use and DNR acting both in advisory and supervisory roles. Under Wis. Admin. Code sec. NR 116.05(1) municipalities must "adopt and . . . enforce reasonable flood plain zoning ordinances for all streams and flood plains within their respective jurisdictions." DNR is required to review and approve or disapprove all local flood plain zoning ordinances, sec. NR 116.22(2), and all municipalities' amendments to flood plain zoning ordinances, flood plain zoning maps, official floodway lines, and water surface profiles, sec. NR 116.21(6)(e).[2] If a municipality fails to adopt a

---

[1] The judgment also reversed a DNR decision which denied La Crosse's application for a permit to extend a sanitary sewer. The parties agree that DNR's appeal from that portion of the judgment is moot.

[2] Wis. Admin. Code sec. NR 116.03 contains the following definitions:

(10) *Flood fringe.* The flood fringe is that portion of the flood plain outside of the floodway, which is covered by flood waters during the regional flood; it is generally associated with standing water rather than rapidly flowing water.

"reasonable and effective" flood plain zoning ordinance, DNR must hold a public hearing, determine the boundaries of the flood plain, and adopt a flood plain zoning ordinance which will supersede the municipality's

(11) *Flood plain.* The flood plain is the land which has been or may be hereafter covered by flood water during the regional flood. The flood plain includes the floodway and the flood fringe.

. . . .

(15) *Floodway.* The floodway is the channel of a river or stream and those portions of the flood plain adjoining the channel required to carry and discharge the flood water or flood flows associated with the regional flood.

. . . .

(18) *Hydraulic floodway lines.* Hydraulic floodway lines shall delineate the channel of the river or stream and those portions of the adjoining flood plains which are reasonably required to carry and discharge the regional flood flow without any measurable increase in flood heights.

. . . .

(22) *Official floodway lines.* Official floodway lines are those lines which have been adopted by the county, city or village, approved by the department, and which are shown on the official flood plain zoning maps and used for regulatory purposes.

(23) *Open space use.* Open space uses are those uses having a relatively low flood damage potential, such as those uses associated with agriculture, recreation, parking, storage yards, or certain sand and gravel operations.

(24) *Regional flood.* The regional flood is a flood determined to be representative of large floods known to have generally occurred in Wisconsin and which may be expected to occur on a particular stream because of like physical characteristics. The regional flood is based upon a statistical analysis of streamflow records available for the watershed and/or an analysis of rainfall and runoff characteristics in the general watershed region. The flood frequency of the regional flood is once in every 100 years; this means that in any given year there is a 1% chance that the regional flood may occur. During a typical 30-year mortgage period, the regional flood has a 26% chance of occurring.

. . . .

(31) *Water surface profile.* The water surface profile is a graphical representation of the height of the water surface

ordinance. Sec. 87.30(1)(a), Stats. DNR's flood plain determination and zoning ordinance are reviewable under ch. 227, Stats. Sec. 87.30(1)(b).

In late 1980, DNR concluded that there were problems with the engineering studies of the La Crosse River flood plain which were the basis of flood plain maps used by the City of La Crosse and the County of La Crosse. DNR performed another study of the La Crosse River flood plain and, in July 1981, advised La Crosse that its flood-plain zoning ordinance needed to be upgraded. DNR also advised La Crosse as to what flood profile and floodway lines it recommended La Crosse adopt, based on the results of the study.

Wis. Admin. Code sec. NR 116.05(4) provides that municipalities must upgrade their flood plain zoning ordinances as new information, including new flood data, new hydrologic data, and improved technological information and methods, becomes available. Rather than amend its flood plain zoning ordinance in accordance with DNR's recommendations, however, La Crosse hired a private engineering firm, Mead & Hunt, Inc., to perform a second study. Mead & Hunt's study, when completed, showed a floodway much narrower than that predicted by DNR's study. Although land use is restricted both in flood fringe areas and in floodway areas, the restrictions on development in a floodway are much more severe. *Compare* sec. NR 116.13 *and* sec. NR 116.14.[3] La Crosse

throughout a county, city or village based upon a certain flow passing through the river or stream. A water surface profile based upon flows occurring during a regional flood is used in regulating the flood plain areas.

[3] Wis. Admin. Code sec. NR 116.13 regulates land use in floodway areas. It provides in part:

(1) The following uses are generally prohibited in floodway areas: Any fill, deposit, obstruction, excavation, storage of materials, or structure which, acting alone or in combination with existing or future similar works, will cause an increase equal

could therefore allow more development in its flood plain under an ordinance based on Mead & Hunt's study than it could under an ordinance based on DNR's study.

to or greater than 0.1 foot (3 cm.) in the height of the regional flood or will affect the existing drainage courses or facilities. . . . [T]he following uses are always prohibited in floodway areas:

 (a) Any structures that are:

 1. Designed for human habitation; or

 2. Associated with high flood damage potential; or

 3. Not associated with permanent open space uses.

 (b) Any storage of materials that are buoyant, flammable, explosive, or injurious to human, animal, plant, fish or other aquatic life.

 (c) Any uses which are not in harmony with, or which may be detrimental to, the uses permitted in the adjoining districts.

 (d) Any on-site sewage disposal system, whether public or private . . . .

 (e) Any wells, whether public or private, which are used to obtain water for ultimate human consumption.

 (f) Any solid waste disposal site, whether public or private.

 (2) Counties, cities and villages, using the appropriate procedure described in section NR 116.21, may issue permits allowing the uses in floodway areas described below, but only if the effects of such uses are consistent with all of the standards contained in subsection (1) above.

 (a) Open space uses having a relatively low flood damage potential, such as those uses associated with agriculture, recreation, parking, storage yards, or certain sand and gravel operations.

 (b) Certain structures which are accessory to permitted open space uses or historical areas, if the structures meet all of the following criteria:

 . . . .

 (c) Campgrounds, provided all of the following criteria are met and approval is granted by the department:

 . . . .

 (e) Public utilities, streets and bridges provided that:

 . . . .

Wis. Admin. Code sec. NR 116.14 regulates land use in flood fringe areas. It provides in part:

 (1) (a) Counties, cities and villages, using the appropriate procedure described in section NR 116.21, may issue permits

DNR advised La Crosse that the Mead & Hunt study was inadequate, requiring DNR to disapprove it. La Crosse nevertheless adopted a flood plain zoning ordinance consistent with the Mead & Hunt study. The new

allowing uses in flood fringe areas which are compatible with the criteria in this section.

. . . .

(c) Flood fringe developments may be permitted only when such developments do not cause any increase equal to or greater than 0.1 foot (3 cm.) in the height of the regional flood of any tributaries to the main stream, drainage ditches, or any other drainage facilities or systems. Increases greater than 0.1 foot (3 cm.) may be permitted, but only if amendments are made to the affected official floodway lines, water surface profiles, flood plain zoning maps and flood plain zoning ordinances in accordance with the provisions of sections NR 116.12 and NR 116.21 (6).

(d) Flood fringe developments may be permitted only when such developments do not materially affect the storage capacity of the flood plains, based upon an equal degree of hydrologic encroachment (volume of storage area that is lost), particularly in flood plain areas upstream from urban areas. For the purposes of this subsection, "materially" is defined as any increase in the discharge of the regional flood which causes a rise in the water surface profile of 0.1 foot (3 cm.).

(2) (a) Any structure or building used for human habitation (seasonal or permanent), which is to be erected, constructed, reconstructed, altered, or moved into the flood fringe area shall be placed on fill, with the finished surface of the first floor at or above the flood protection elevation. If any such structure or building has a basement, it shall be flood proofed in accordance with section NR 116.16. . . .

. . . .

(4) Any commercial structure or building which is to be erected, constructed, reconstructed, altered or moved into the flood fringe area shall meet the requirements of subsections (2) (a) and (b) above. Certain yards, parking lots and other accessory land uses may be at lower elevations. . . .

(5) Any manufacturing or industrial structure or building which is to be erected, constructed, reconstructed, altered or moved into the flood fringe area shall be protected to the flood protection elevation utilizing fill, levees, floodwalls, adequate flood proofing

ordinance was submitted to DNR for approval, pursuant
to Wis. Admin. Code sec. NR 116.21(6). DNR disap-
proved the ordinance in a letter dated May 24, 1982. The
letter stated that Mead & Hunt's study was based on sev-
eral inaccurate or unsupported factual assumptions, and
that the ordinance was internally inconsistent and was in-
compatible with the flood plain zoning ordinances of
other municipalities upstream from La Crosse.

DNR subsequently gave La Crosse notice that it would
hold a public hearing on July 12, 1982, preparatory to
adopting a flood plain zoning ordinance for La Crosse.
La Crosse petitioned the circuit court to enjoin the hear-
ing and to reverse DNR's decision disapproving the or-
dinance.[4] The circuit court issued an *ex parte* stay on

measures or any combination thereof. . . . A lesser degree of
protection . . . may be permissible for storage yards, parking
lots and other auxiliary uses.

(6) Storage of any materials which are buoyant, flammable,
or explosive, or which in times of flooding could be injurious
to property, water quality, or human, animal, plant, fish or
aquatic life, shall be either flood proofed to or placed at or above
the flood protection elevation. . . .

(7) (a) When failure or interruption of public facilities would
result in danger to the public health or safety or where such
facilities are essential to the orderly functioning of the area, ade-
quate flood proofing measures shall be provided to the flood
protection elevation . . . .

(8) All on-site sewage disposal systems shall meet the ap-
plicable provisions of the local zoning ordinances . . . .

(9) All wells . . . shall be flood proofed to the flood protection
elevation . . . .

[4] Section 87.30(1)(b), Stats., indicates that the method by
which a municipality obtains court review of a DNR decision
disapproving a flood plain zoning ordinance is to wait until DNR
has adopted its ordinance, and then challenge the disapproval as
part of the review of DNR's ordinance. Section 87.30(1)(b) pro-
vides in part:

All final orders, determinations or decisions made under this
subsection shall be subject to review under ch. 227 and be effective
20 days after the same have been served unless such order, de-

June 23, 1982, and continued the stay August 25. It ordered La Crosse to abide by its new ordinance pending determination of the challenge to DNR's decision. On April 6, 1983, the trial court reversed DNR's disapproval of the ordinance and ordered DNR to approve the ordinance. It held, looking to the language of sec. 87.30 (1) (a), Stats., that DNR had not shown that La Crosse's ordinance was unreasonable and ineffective flood plain zoning or that La Crosse had failed to adopt a flood plain zoning ordinance for an area where appreciable flood damage was likely to occur or that La Crosse had failed to adopt an ordinance which would result in a practical minimum of flood damage in an area.

La Crosse argues that the trial court was correct in placing the burden on DNR to prove that La Crosse's new ordinance was not a reasonable and effective flood plain zoning ordinance. We disagree with that assertion. Under the procedure created by sec. 87.30, Stats., DNR's disapproval of a local ordinance triggers its determination of flood plain boundaries and adoption of an ordinance superseding the local ordinance. DNR's flood plain determination and zoning ordinance are reviewable under ch. 227, Stats. The burden in a ch. 227 review proceeding is on the party seeking to overturn the agency action, not on the agency to justify its action. The legislature did not intend that municipalities obtain the benefit of a less deferential standard of review by appealing the agency's preliminary decision instead of its final order. The trial

termination and decision specifies a different date upon which the same shall be effective. *Such flood plain determination and zoning ordinance* shall be of the same effect as if adopted by the county, city or village. . . . [Emphasis added.]

DNR did not argue to the trial court or to this court that La Crosse's petition for ch. 227 review was premature, however, so we do not address that issue.

court erred by not applying the standards of ch. 227 when it reviewed DNR's disapproval of La Crosse's ordinance.

In reviewing a trial court order reversing a decision of an administrative agency, our scope of review is identical to that of the trial court. *Boynton Cab Co. v. ILHR Department*, 96 Wis. 2d 396, 405, 291 N.W.2d 850, 855 (1980). We therefore need not remand this case for reconsideration under the correct allocation of proof, but may determine independently whether DNR's decision must be overturned.

The decision on review is DNR's determination that La Crosse's ordinance is not a "reasonable and effective flood plain zoning ordinance" within the meaning of sec. 87.30(1)(a), Stats. This involves DNR's construction of sec. 87.30(1)(a) and its application of sec. 87.30(1)(a) to the particular facts of this case. These issues are questions of law. *Arrowhead United Teachers v. ERC*, 116 Wis. 2d 580, 587, 342 N.W.2d 709, 713 (1984). We are not bound by an agency's conclusions on matters of law. *Dept. of Revenue v. Milwaukee Refining Corp.*, 80 Wis. 2d 44, 48, 257 N.W.2d 855, 858 (1977). Nevertheless, the construction of a statute by the agency charged with administering it is entitled to great weight, and should not be upset if a rational basis for it exists. *Environmental Decade v. ILHR Dept.*, 104 Wis. 2d 640, 644, 312 N.W.2d 749, 751 (1981). Further, the court must grant due deference to the agency in those areas in which it has specialized knowledge and technical expertise. *Dairy Equipment Co. v. ILHR Department*, 95 Wis. 2d 319, 327, 290 N.W.2d 330, 334 (1980).

Here, DNR's determination ultimately concerned the adequacy of Mead & Hunt's engineering study, on which La Crosse's flood plain zoning ordinance was based. This determination calls for the exercise of the agency's spe-

cialized technical expertise, to which we must grant due deference under *Dairy Equipment.*

DNR's letter of May 24, 1982, stating that it could not approve the ordinance, specified the following reasons for disapproval:

1) The study assumed that fill which had recently been placed in an area designated by DNR as floodway, and which might be ordered removed, would remain in place;

2) The study assumed that a certain area would be protected from floodwaters by an earthen berm, but had made no survey or soil analysis of the berm to determine whether it was in fact high enough or structurally sound enough to retain floodwaters;

3) The study assumed that the regional flood would result from a summer thunderstorm, when in fact spring snowmelts produce greater runoff than summer thunderstorms, and an analysis of a regional flood produced by snowmelt would show a peak discharge and flood profile significantly different from that shown by the study;

4) The ordinance designated certain areas as "flood fringe" which in fact had conveyed floodwaters during a 1978 flood;

5) The study assumed that certain areas would be available to temporarily store floodwaters, but those areas were designated as "flood fringe"; the "flood fringe" designation would allow extensive development of those areas, which would make them much less available for floodwater storage;

6) The newly adopted flood plain map and water surface profile were inconsistent with a part of La Crosse's pre-existing ordinance which would remain in effect; and

7) The flood plain map and water surface profile were incompatible with flood plain maps and water surface profiles previously adopted by La Crosse County and the City of Onalaska.

La Crosse points to nothing in the record which undercuts the factual premises of DNR's reasons for disapproving the ordinance. The reasons fall within the criteria for approval or disapproval of municipal flood plain zoning ordinances set out in Wis. Admin. Code sec. NR 116.22 (2).[5] A rational basis exists for DNR's conclusion that La Crosse's ordinance was not a "reasonable and effective flood plain zoning ordinance" within the meaning of sec. 87.30(1)(a), Stats.

La Crosse argues, on several grounds, that DNR's May 24 letter does not meet statutory or regulatory requirements for disapproval of a local flood plain zoning ordinance. None of the arguments are meritorious.

La Crosse argues that sec. 87.30(1), Stats., requires that DNR's decision specifically state that the ordinance would not be effective or that it would not result in a minimum of flood damage for the applicable area. Section 87.30(1) requires only that DNR "make a decision in writing of insufficiency" of the local ordinance. It

---

[5] Wis. Admin. Code sec. NR 116.22(2) provides:

The department shall issue a certificate of approval to a county, city or village upon a finding that the adopted flood plain zoning ordinance meets the provisions of this chapter. The department review of flood plain zoning ordinances may include, but is not limited to, determinations that:

(a) The most accurate maps were utilized in delineating the flood plains;

(b) All flood plain zoning maps and flood plain zoning ordinances are compatible with all other shoreland regulations, existing zoning and land use plans;

(c) All water surface profiles, flood plain zoning maps and flood plain zoning ordinances are compatible with those of the adjoining communities on the same streams or rivers; and

(d) The floodway and flood plain lines shown on the flood plain zoning maps are accurate.

does not mandate the use of any particular wording in the written decision.

La Crosse argues that the decision must state that the ordinance would not fulfill the purposes of flood plain zoning set out in Wis. Admin. Code sec. NR 116.01(2). Section NR 116.01(2) sets out the objectives DNR will attempt to reach in its supervision of flood plain zoning. It does not set criteria for approval of local ordinances. Those criteria are specified in sec. NR 116.22(2). A decision by DNR that an ordinance does not meet the criteria of sec. NR 116.22 is effectively a determination that the ordinance does not fulfill the purposes set out in sec. NR 116.01.

La Crosse argues that DNR's first and second reasons for disapproval (cited above) indicate disagreement over the factual bases for the conclusions of the Mead & Hunt study, but do not indicate that the floodway and flood plain lines adopted were not accurate. *See* Wis. Admin. Code sec. NR 116.22(2)(d). Landfill placed in a floodway will have a damming effect, which will be eliminated if the fill is removed. The collapse or overtopping of a berm will lead to floodwaters entering behind the berm. If water can reasonably be expected to go where the floodway and flood plain lines indicate that it will not go, the lines are not accurate. It is no consolation to one whose home or business is flooded to know that a city ordinance decrees that he is on dry land.

La Crosse argues that DNR's fourth reason for disapproval (cited above) merely represents a disagreement as to the location of the floodway, and it is not an allegation that La Crosse did not use the most accurate maps in determining the lines of the flood plain. *See* Wis. Admin. Code sec. NR 116.22(2)(a). This argument is specious.

If floodwaters were flowing over an area during the 1978 flood, the area was part of the floodway, by definition; and a flood plain map which excludes that area from the floodway is not "the most accurate" map.

La Crosse argues that internal inconsistency is not specified as a ground for disapproval of an ordinance in Wis. Admin. Code sec. NR 116.22(2). Section NR 116.22 (2) provides that DNR's review "may include, but is not limited to" the specified criteria. DNR's fifth reason for disapproval (cited above) points out that the ordinance contains the seeds of its own invalidation. This was a reasonable ground on which to base disapproval.

La Crosse argues that DNR's decision does not mention any failure by La Crosse to comply with Wis. Admin. Code sec. NR 116.11(2)(b). That section sets prerequisites which must be met before a municipality may fix its official floodway lines riverward of the hydraulic floodway lines. La Crosse does not explain what relevance sec. NR 116.11(2)(b) has to DNR's determination of whether La Crosse's ordinance was reasonable and effective flood plain zoning.

The trial court's judgment reversing DNR's decision disapproving the city's ordinance and ordering DNR to approve the ordinance is reversed. The trial court's order enjoining DNR from proceeding with a public hearing under sec. 87.30(1), Stats., preparatory to adopting an ordinance for La Crosse is also reversed.

On May 16, 1984, La Crosse moved to dismiss this appeal as moot. It stated in its affidavit supporting the motion that DNR has performed a new analysis of the La Crosse River flood plain and that DNR has not submitted the new study to La Crosse or its engineering con-

sultant for review. It argues that DNR must submit the new study to La Crosse for its consideration before it may proceed under sec. 87.30, Stats. DNR states in its affidavit that it has merely made minor revisions to its study and that it transmitted those revisions, along with all underlying data, to La Crosse's consultant at the consultant's request. We granted La Crosse's motion for permission to file a reply to DNR's response to La Crosse's motion. We have considered La Crosse's argument and conclude that the existence of a revised study by DNR does not render this appeal moot. The issue in this case is whether DNR's decision that La Crosse's ordinance was not reasonable and effective flood plain zoning was lawful under ch. 227, Stats. The resolution of that issue is unaffected by any revisions DNR made to its own study of the flood plain after it disapproved the study on which La Crosse relied.

Further, neither sec. 87.30, Stats., nor Wis. Admin. Code ch. NR 116 indicate that DNR must submit newly-acquired data to local governments so that they may "consider" whether to amend their flood plain zoning ordinances in accordance with the new data. Rather, sec. NR 116.05 (4) provides that municipalities *"shall* upgrade flood plain zoning ordinances . . . to reflect current information" as it becomes available (emphasis supplied), and sec. 87.30 (1) (a) provides that if they fail to do so, DNR is required to do so. That is precisely the chain of events which gave rise to the present appeal.

La Crosse is not foreclosed from raising objections to DNR's latest study. Section 87.30 (1) (a), Stats., provides that if DNR uses previously completed hydraulic and engineering studies when it adopts a flood plain zoning ordinance for a municipality, DNR "shall be responsible for ensuring that the studies are reasonable and accurate." If La Crosse has evidence that DNR's study of the La Crosse River flood plain is not reasonable or accurate, it may present that evidence at the public hearing DNR will

hold before adopting an ordinance. The motion to dismiss the appeal is denied.

*By the Court.*—Judgment reversed. Order enjoining DNR from holding public hearing under sec. 87.30, Stats., reversed. Motion to dismiss appeal denied.