COURT OF APPEALS
DECISION
DATED AND FILED

January 13, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP455**

STATE OF WISCONSIN

Cir. Ct. No. 2023CV665

IN COURT OF APPEALS
DISTRICT I

STUBHUB, INC.,

PETITIONER-CROSS-RESPONDENT-RESPONDENT,

V.

WISCONSIN DEPARTMENT OF REVENUE,

RESPONDENT-CROSS PETITIONER-APPELLANT.

APPEAL from an order of the circuit court for Dane County: STEPHEN E. EHLKE, Judge. *Reversed.*

Before White, C.J., Colón, P.J., and Geenen, J.

¶1 COLÓN, P.J. The Wisconsin Department of Revenue (DOR) appeals from an order of the circuit court reversing a decision of the Wisconsin Tax Appeals Commission (the Commission). In its decision, the Commission found that StubHub, Inc. (StubHub) was subject to the sales tax, *see* WIS. STAT.

§ 77.52(2)(a)2. (2023-24),[1] for the sales of admissions to recreational events in Wisconsin that occurred through its online platform from 2008 to 2013.  However, the Commission also found that StubHub was not subject to the penalty for StubHub's failure to pay the sales tax, *see* WIS. STAT. § 77.60(4), during those same years.  We conclude that StubHub is both subject to the sales tax and the penalty for its failure to pay the sales tax.  Thus, for the reasons set forth below, we reverse the circuit court's order.

## BACKGROUND

¶2      StubHub operates an online marketplace where tickets to sporting events, concerts, theatre, and other live entertainment events are bought and sold. To use StubHub's online marketplace, both ticketholders[2] and ticket buyers register for an account with StubHub.  As part of the account registration, users were required to accept StubHub's User Agreement that contained terms and conditions governing their use of StubHub's website.

¶3      Ticketholders using StubHub's online marketplace listed tickets for sale.  To list a ticket for sale, ticketholders were required to (1) identify the event using StubHub's online catalog of events or, if none existed, ask StubHub to create a new event; (2) enter the ticket details, including venue, date, time, seat location, delivery method, and any other relevant details; and (3) set the ticket price.  Tickets remained available on StubHub's website unless withdrawn by the ticketholder or StubHub received payment from a ticket buyer for the purchase of

---

[1] All references to the Wisconsin Statutes are to the 2023-24 version.

[2] We use the term ticketholder as used by the parties to refer to a person who sold tickets on StubHub's website.

the ticket. StubHub generally did not limit a ticketholder's ability to withdraw ticket listings, change the price, or sell a ticket elsewhere. The only exception to this practice was a ticketholder who chose to use the Instant Download option, in which case the ticketholder was required to list tickets exclusively with StubHub. If a ticket did not sell, the ticket remained with the ticketholder. Ticketholders who listed tickets on StubHub's website tended to be individuals; however, other ticketholders who listed tickets on StubHub's website were entities in the business of buying and reselling tickets. StubHub itself never bought tickets to sell on its own behalf or to hold for future sales.

¶4     At the time of a sale, the ticket buyer paid the ticketholder's listing price plus any fees charged by StubHub. StubHub's fees were equal to a percentage of the sale plus a logistics fee, which varied from sale to sale. StubHub collected payments from ticket buyers and, after taking its fees, returned the remainder of the payment to the ticketholder. StubHub's revenue came from the fees that it collected when a ticket sold.

¶5     For the transfer of hardcopy tickets following a sale, StubHub provided instructions for ticketholders on mailing or delivering tickets to the ticket buyers. For transfer of electronic tickets, StubHub provided direct access to ticket buyers through its website. Pursuant to agreements with the organizations, tickets sold for Milwaukee Brewers games and University of Wisconsin football, basketball, and hockey games followed a process of "barcode integration" where the ticketholders uploaded the barcode number for the ticket and a new ticket was issued to the ticket buyer. Finally, in some limited instances, tickets were physically transferred in person using a service called Last Minute Transactions when a ticket was sold shortly before the event. As a result of this process, ticketholders and ticket buyers were generally unaware of the other's identity, and

StubHub only disclosed the identity of ticketholders or ticket buyers under limited circumstances.

¶6 As part of this process, StubHub provided a guarantee—called the FanProtect Guarantee—to ticket buyers that StubHub would find suitable replacement tickets or issue a full refund if the ticket buyer did not receive the tickets in time, if the tickets were not valid, or if the tickets received were not what the ticket buyer purchased.

¶7 During the years 2008 to 2013, nearly $154 million in ticket sales occurred through StubHub's online marketplace for events that took place in Wisconsin.[3] The record contains no evidence that ticket buyers paid any sales or use taxes on ticket purchases made through StubHub, and StubHub itself paid no taxes on the sales either. There is also no evidence in the record as to what, if any, sales or use tax was paid by ticketholders on the original purchases of the tickets later sold on StubHub. However, the parties stipulated that it was "highly likely" a tax was charged on the original ticket purchases in most cases.

¶8 In 2014, DOR notified StubHub that it would be auditing StubHub's sales and use tax payments for the years 2008 to 2013. Following the audit, DOR issued a Notice of Field Action and Field Audit Report and assessed $8,495,937.50 in back taxes, plus another $8,567,136.15 in interest, penalties, and fees. DOR assessed a 25% negligence penalty because DOR found that StubHub negligently ignored published guidance in two tax bulletins indicating that

___

[3] More specifically, the audit revealed total sales for each year as follows: $17,063,547.74 in 2008, $18,221,690.32 in 2009, $19,090,025.32 in 2010, $34,952,399.53 in 2011, $31,923,811.74 in 2012, and $32,299,811.57 in 2013.

StubHub was responsible for paying Wisconsin's sales or use tax. DOR denied StubHub's petition for redetermination, and StubHub appealed to the Commission.

¶9 After a hearing, the Commission granted summary judgment in part to DOR and found that StubHub was subject to the sales tax. On the other hand, the Commission also found that StubHub was not subject to the penalty for its failure to pay the sales tax and reversed DOR's imposition of a penalty against StubHub for StubHub's failure to pay the sales and use tax. Thus, the Commission also granted summary judgment in part to StubHub.

¶10 More specifically, the Commission rejected StubHub's characterization of its role as a passive online marketplace and found that StubHub's imposition of fees on a per transaction basis, specific ticket transfer processes, and proprietary software "go further than what the Commission would consider [a] passive role" and transformed StubHub into a seller transferring tickets between the ticketholders and ticket buyers. The Commission stated, "Wisconsin sales tax is a transaction tax, and only requires that there be a transfer of ownership or enjoyment of services for use or consumption." The Commission further noted that the ticketholder's identity remained anonymous, which made StubHub a party to the sale contract and, despite the User Agreement explicitly disclaiming any agency relationship, "StubHub must be acting as an agent of the ticketholder, because the sale could not be concluded if it were not so acting." Thus, the Commission found StubHub subject to the sales tax.

¶11 As to the penalty, the Commission found that StubHub would not have been on notice of its obligation to pay the sales tax. According to the Commission, StubHub would not have understood itself to be a "ticket broker"

within the meaning of DOR's published guidance on who is responsible for the tax, and therefore, StubHub was not subject to the penalty.

¶12    Both DOR and StubHub sought review in the Dane County Circuit Court. Following briefing on the matter, the circuit court found that the sales tax statute was ambiguous and StubHub was not subject to the sales tax. As a result, the circuit court did not reach the issue of whether StubHub was subject to the penalty for its failure to pay the sales tax. DOR now appeals.

## DISCUSSION

¶13    On appeal, DOR argues that the Commission correctly found that StubHub was subject to the sales tax but incorrectly found that StubHub was not subject to penalties for its failure to pay the sales tax. We conclude that StubHub is both subject to the sales tax and subject to penalties for its failure to pay the sales tax.

### I.    Standard of Review

¶14    "When an appeal is taken from a circuit court order reviewing an agency decision, we review the decision of the agency, not the circuit court." *Lake Beulah Mgmt. Dist. v. DNR*, 2011 WI 54, ¶25, 335 Wis. 2d 47, 799 N.W.2d 73 (citation omitted). We "shall not substitute [our] judgment for that of the agency as to the weight of the evidence on any disputed finding of fact." WIS. STAT. § 227.57(6). "[D]ue weight shall be accorded the experience, technical competence, and specialized knowledge of the agency involved." Sec. 227.57(10). However, we "shall accord no deference to the agency's interpretation of law." Sec. 227.57(11). We affirm the agency's action unless we find "a ground for setting aside, modifying, remanding or ordering agency action

or ancillary relief." Sec. 227.57(2). "The burden in a ch. 227 review proceeding is on the party seeking to overturn the agency action, not on the agency to justify its action." *City of La Crosse v. DNR*, 120 Wis. 2d 168, 178, 353 N.W.2d 68 (Ct. App. 1984); *see also* WIS. STAT. § 77.59(2) ("The determination shall be presumed to be correct and the burden of proving it to be incorrect shall be upon the person challenging its correctness.").

¶15    In this case, we review the Commission's grant of summary judgment finding StubHub subject to the sales tax but not subject to any penalties for failing to pay the tax. Summary judgment "shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2). We review a decision granting summary judgment independently. *Lambrecht v. Estate of Kaczmarczyk*, 2001 WI 25, ¶21, 241 Wis. 2d 804, 623 N.W.2d 751.

¶16    Additionally, in reviewing the Commission's grant of summary judgment, we must also interpret the tax statutes, including WIS. STAT. § 77.52 and WIS. STAT. § 77.60(4), to determine whether StubHub is subject to the sales tax and any penalties for its failure to pay the sales tax. "The interpretation of a statute is a question of law that we review de novo." *E-Z Roll Off, LLC v. County of Oneida*, 2011 WI 71, ¶16, 335 Wis. 2d 720, 800 N.W.2d 421. "[S]tatutory interpretation 'begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry.'" *State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110 (citation omitted). We give statutory language "its common, ordinary, and accepted meaning." *Id.* "[W]here ambiguity and doubt exist, it must be resolved in favor

of the person upon whom it is sought to impose the tax." ***DOR v. Milwaukee Refining Corp.***, 80 Wis. 2d 44, 48-49, 257 N.W.2d 855 (1977).

¶17 With these principles in mind, we turn first to whether StubHub is responsible for the sales tax and then to whether StubHub is responsible for the penalty for its failure to pay the sales tax.

## II. Wisconsin's Sales Tax

¶18 As relevant here, "[f]or the privilege of selling … the services described under par. (a) at retail in this state … to consumers or users, … a tax is imposed upon all persons selling … the services at the rate of [5%] of the sales price from the sale … of the services." WIS. STAT. § 77.52(2). The sales tax applies to "the sale of admissions to amusement, athletic, entertainment or recreational events or places." Sec. 77.52(2)(a)2.a. In other words, Wisconsin imposes a 5% sales tax on the sale at retail of admissions to amusement, athletic, entertainment, or recreational events or places. "For the purpose of the proper administration of this section and to prevent evasion of the sales tax it shall be presumed that all receipts are subject to the tax until the contrary is established." Sec. 77.52(13).

¶19 Similar to the proceedings before both the Commission and the circuit court, the issue on appeal to determine whether StubHub is subject to the sales tax is whether StubHub is a person selling within the meaning of WIS. STAT. § 77.52(2). The tax statutes, however, simply define a seller generally as "every person selling." WIS. STAT. § 77.51(17).

¶20 Acknowledging what DOR terms a "circularity" in the relevant statutory definitions, *see* ***Kollasch v. Adamany***, 104 Wis. 2d 552, 562, 313

N.W.2d 47 (1981), DOR argues instead that StubHub is a seller under basic dictionary definitions, that StubHub is a seller considering general contract principles, and that StubHub is a seller by way of comparison to similar arrangements such as consignment stores. We ultimately agree with DOR, and we conclude that StubHub is a person selling within the meaning of WIS. STAT. § 77.52(2) and, therefore, subject to the sales tax.

¶21 Statutory definitions in the same chapter as the sales tax statute define a sale as "the transfer of the ownership of, title to, possession of, or enjoyment of tangible personal property, or items, property, or goods under [WIS. STAT. §] 77.52(1)(b), (c), or (d), or services for use or consumption[.]" WIS. STAT. § 77.51(14). Similarly, dictionary definitions of "sell" include "to give something to someone else in return for money," and a "sale" is defined as "an act of exchanging something for money." *Sell*, Cambridge Dictionary.com, https://dictionary.cambridge.org/us/dictionary/english/sell (last visited January 9, 2026); *Sale*, Cambridge Dictionary.com, https://dictionary.cambridge.org/us/dictionary/english/sale (last visited January 9, 2026).

¶22 While StubHub argues that we should dismiss these definitions because they only help to establish the existence of a sale, we nonetheless find them helpful in determining who in fact is a seller because, as the statutory definitions indicate, a seller is one who makes a sale. *See* § 77.51(17). Thus, by defining and identifying the sale—i.e., the transfer in exchange for money—that took place, we can identify the seller.

¶23 Using the above definitions as our guide, we conclude that StubHub is a person selling within the meaning of the sales tax statute because StubHub

effected the sale by transferring the tickets in exchange for payment. StubHub is the only entity that the ticket buyer encountered during the sales transaction, and importantly, StubHub itself conducted the transaction in exchange for payment—StubHub processed the transaction, charged the ticket buyer's form of payment, deducted its fees from the payment, and then transferred the balance of that payment to the ticketholder. StubHub also provided the method and instructions for delivery of the tickets to the ticket buyers. Because StubHub effected the actual transfer of the tickets sold on its website in exchange for payment, i.e., the sale, we conclude that StubHub is in fact a seller. *Cf.* ***Kollasch***, 104 Wis. 2d at 568 (recognizing that a seller "engag[es] in a transaction for which the gross receipts are subject to the sales tax").

¶24 StubHub characterizes its role as facilitating the sale transaction between the ticketholder and ticket buyer in a way that does not render StubHub a seller. In fact, StubHub compares itself to an auctioneer. We are not persuaded. As the Commission aptly noted, StubHub's role is not as passive as StubHub would have us believe such that we can accept that StubHub is merely a facilitator instead of a seller involved in the transaction.

¶25 StubHub additionally argues that the Marketplace Provider Law enacted in 2019 is evidence that it was not subject to the sales tax during 2008 to 2013. *See* 2019 Wis. Act 10, §§ 11, 12, 22, 24. DOR, on the other hand, argues that the Marketplace Provider Law clarified that businesses like StubHub are subject to the sales tax law and the passage of the law was intended to quiet the growing amount of litigation from businesses like StubHub challenging their responsibility for paying taxes.

¶26 The Marketplace Provider Law added two specific definitions—one for "marketplace provider" and one for "marketplace seller"—to the sales tax statutory scheme. *See* WIS. STAT. § 77.51(7i), (7j). Under the new law, a marketplace provider is

> any person who facilitates a retail sale by a seller by listing or advertising for sale by the seller, in any manner, tangible personal property, or items, property, or goods under [WIS. STAT. §] 77.52(1)(b), (c), or (d), or a service specified under [§] 77.52(a) and, who directly or indirectly, through agreements or arrangements with 3rd parties, processes the payment from the purchaser for the retail sale, regardless of whether the person receives compensation or other consideration in exchange for the services provided by the person.

Sec. 77.51(7i). A marketplace seller is then defined as "a seller who sells products through a physical or electronic marketplace operated by a marketplace provider, regardless of whether the seller is required to be registered with [DOR]." Sec. 77.51(7j).

¶27 The law then provides that

> a marketplace provider is liable for the tax imposed under [WIS. STAT. § 77.52] on the entire sales price charged to the purchaser, including any amount charged by the marketplace provider for facilitating the sale, from the sale, license, lease, or rental of tangible personal property, or items, property, or goods under sub. (1)(b), (c), or (d), or services under sub. (2).

Sec. 77.52(3m)(a). Further, "[a] marketplace provider shall collect and remit tax on a sale facilitated on behalf of a marketplace seller[.]" WIS. STAT. § 77.523(1).

¶28 StubHub does not dispute that, under the Marketplace Provider Law, it is now subject to the sales tax. Rather, it argues that until this law was passed, it was not subject to the sales tax, and the Marketplace Provider Law enacted a

11

substantive change in the law that now subjects StubHub to the sales tax where it was not subject to the sales tax before. By contrast, DOR argues that the Marketplace Provider Law was not a substantive change in the law but instead was intended to clarify that businesses like StubHub were subject to the sales tax. DOR points to an increase in litigation over the sales tax from businesses like StubHub that required the law to be clarified to end the ongoing litigation over the sales tax. We agree with DOR.

¶29 When the legislature amends a statute, "there is a presumption that the legislature intends to change the law by creating a new right or withdrawing an existing right." *Lang v. Lang*, 161 Wis. 2d 210, 220, 467 N.W.2d 772 (1991). This presumption may be rebutted because an amendment may be "intended to clarify the meaning" of existing statutory text "rather than substantively altering" it. *Buettner v. DHFS*, 2003 WI App 90, ¶16, 264 Wis. 2d 700, 663 N.W.2d 282. When an amendment is made "to a statute, the meaning of which has been a subject of recent controversy," the amendment is "more likely intended as clarifications of the law, rather than substantive changes." *Hardin, Rodriguez & Bovin Anesthesiologists, Ltd. v. Paradigm Ins. Co.*, 962 F.2d 628, 638 (7th Cir. 1992); *see also Recht-Goldin-Siegal Const., Inc. v. DOR*, 64 Wis. 2d 303, 309-10, 219 N.W.2d 379 (1974).

¶30 The development of the Marketplace Provider Law indicates that clarification rather than substantive change is precisely what occurred here. In 2018, DOR approached the legislature with proposed changes to the sales tax law, and DOR explained that it had been dealing with several retailers in certain industries that had been "flat-out ignoring" DOR assessments. DOR explained that its proposed legislation would "eliminate[] excuses for non-compliance." The Marketplace Provider Law that was eventually introduced and passed largely

tracked DOR's proposed legislation. Consequently, the Marketplace Provider Law was not intended as a substantive change in the law but rather was intended to clarify the law and add more specific definitions to the existing broad definition of a seller subject to the sales tax.

¶31 Indeed, this is not the first time that adding more specific definitions to an existing broader definition has been construed as a clarification instead of a substantive change in the law. Our supreme court addressed a similar situation when the legislature made changes to the definition of retailer to add more specific categories of retailers to a broader definition of retailer originally contained in the statute. ***Recht-Goldin-Siegal Const.***, 64 Wis. 2d at 308-09.

¶32 In that case, DOR assessed sales and use taxes against a construction company for purchasing apartment furnishings for use in rental apartments owned by the construction company. ***Id.*** at 305. The construction company argued that it was not subject to the tax because it was not a retailer within the meaning of the statute, and the construction company argued that a change in the definition of retailer that later added a category of retailer "specifically includ[ing] persons selling household furnishings to landlords for use by tenants in the definition of 'retailer'" was evidence that it was not included under the original definition of retailer. ***Id.*** at 309. The construction company argued "that where an amendment adds language to a statute it is presumed that the legislature intended to include what was previously omitted." ***Id.*** Thus, the construction company argued that it was previously omitted under the definition of retailer and not subject to the tax.

¶33 Our supreme court rejected the construction company's argument. Instead, our supreme court recognized that the term retailer "was always defined in the broadest terms" and stated:

13

> [A]ny further enumeration of specific persons who are included within the definition of "retailer" must serve the purpose of making the statute more detailed and specific and removing all doubt as to its coverage. If the additional subsections were not enumerated they would certainly still be covered under the general broad definition of "retailer" if they were sellers of goods subject to taxation under the statutes.

*Id.* at 310. In other words, our supreme court recognized that the original definition of retailer was sufficiently broad to cover the construction company as a retailer and that the changes to the definition were intended to remove any doubt that the construction company was indeed covered.

¶34 The same rationale applies here where StubHub would certainly still be covered under the broad definition of a person selling that applied prior to the passage of the Marketplace Provider Law and any further enumeration of specific sellers serves the purpose of making the statute more detailed to remove any doubts as to the statute's coverage. Thus, we consider that the Marketplace Provider Law was intended to clarify rather than substantively change the law, and we reject the idea that the Marketplace Provider Law stands for the proposition that StubHub was not subject to the sales tax prior to the passage of the law.

¶35 Accordingly, we are not persuaded by StubHub's arguments, and we conclude that StubHub is a person selling within the meaning of the statute and subject to the sales tax. In so concluding, we note that DOR raised additional arguments that StubHub can be held liable for the sales tax under the "undisclosed principle" doctrine and that StubHub can be deemed a retailer under WIS. STAT. § 77.51(13)(c) for at least some sales. Having concluded that StubHub is a person selling within the meaning of the statute by using statutory and dictionary definitions, we do not address DOR's alternative arguments. *See State v. Blalock*,

150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989) ("[C]ases should be decided on the narrowest possible ground[.]").

### III.   Penalty

¶36     The parties' next dispute arises over whether StubHub is subject to the penalty found in WIS. STAT. § 77.60(4) for its failure to pay the sales tax for the years 2008 to 2013.  We conclude that StubHub is subject to the penalty for its failure to pay the sales tax.

¶37     The penalty statute, WIS. STAT. § 77.60(4), states:

> In case of failure to file any return required under authority of [WIS. STAT. §] 77.58 by the due date, determined with regard to any extension of time for filing, and upon a showing by [DOR] under [WIS. STAT. §] 73.16(4), there shall be added to the amount required to be shown as tax on such return 5[%] of the amount of such tax if the failure is not for more than one month, with an additional 5[%] for each additional month or fraction thereof during which such failure continues, not exceeding 25[%] in the aggregate.

In order to impose the penalty in § 77.60(4), DOR must show that the taxpayer acted with "willful neglect."  *See* § 73.16(4) ("[DOR] shall not impose a penalty on a taxpayer under … [§ 77.60(4)], unless [DOR] shows that the taxpayer's action or inaction was due to the taxpayer's willful neglect and not to reasonable cause.").

¶38     DOR argues that StubHub acted with willful neglect when it failed to file sales tax returns and that StubHub was properly assessed a 25% nonfiling penalty.  DOR relies on guidance published by DOR in the Wisconsin Tax Bulletin that it argues should have made clear to StubHub that it was subject to the

sales tax, and because StubHub ignored this clear guidance from DOR, StubHub is properly subject to a penalty.

¶39    Wisconsin Tax Bulletin (WTB) 172, dated July 2011, provides guidance from DOR as to how the sales and use tax applies to admissions to amusement, athletic, entertainment, or recreational events or places made on or after October 1, 2009.  In particular, Example 19 applies to the sale of a ticketholder's tickets using a ticket broker's website where the ticket broker does not have possession of the tickets.  It further explains that the example applies to a ticketholder who gives a ticket broker the right to sell tickets on the ticket broker's website, the ticket broker does not obtain possession of the tickets, the ticketholder is responsible for shipping the tickets to the purchaser at the ticket broker's direction, the ticketholder sets the sales price for the ticket, and the ticket broker sends a payment to the ticketholder less any commission or fees upon the sale of a ticket.  WTB 172 explains that, in this instance, the ticket broker is responsible for the sales tax on the sale of the ticket.

¶40    Both StubHub and the Commission point to the WTB 172's use of the term "ticket broker" as a way to sidestep the imposition of the penalty. However, limiting the analysis strictly to the use of WTB 172's use of the term "ticket broker" takes too narrow of an approach.  Rather, examining WTB 172 in its entirety demonstrates that WTB 172 further explained what is meant by ticket broker and reading Example 19 in full clearly demonstrates that DOR considered that StubHub was a ticket broker subject to the sales tax.  Thus, we conclude that StubHub is indeed subject to the penalty for its failure to pay the sales tax.

**CONCLUSION**

¶41     We conclude that StubHub is both subject to the retail sales tax and the penalty for its failure to pay the retail sales tax.  Accordingly, we reverse the circuit court's order.

*By the Court.*—Order reversed.

Recommended for publication in the official reports.