WISCONSIN EMPLOYERS INSURANCE COMPANY,
a domestic corporation, Plaintiff-Respondent,†

v.

BLUE CROSS & BLUE SHIELD UNITED OF WISCONSIN,
a domestic corporation, Defendant-Appellant.

Court of Appeals

*No. 84–802. Submitted on briefs March 5, 1985.—
Decided April 19, 1985.*
(Also reported in 368 N.W.2d 838.)

† Petition to review pending. This petition was not decided at the time the volume went to press. Its disposition will be reported in a later volume.

For the defendant-appellant the cause was submitted on the briefs of *Foley, Foley, Seehawer & Wyant, S.C.,* with *C. Judley Wyant* of counsel, of Racine.

For the plaintiff-respondent the cause was submitted on the briefs of *Habush, Habush & Davis, S.C.,* with *Randall L. Nash* of counsel, of Milwaukee.

Before Wedemeyer, P.J., Moser and Sullivan, JJ.

SULLIVAN, J.   Blue Cross & Blue Shield United of Wisconsin (Blue Cross) appeals from a judgment in favor of Wisconsin Employers Insurance Company (WEIC) holding that Blue Cross was responsible, under administrative code extension-of-benefit requirements, for all hospital and medical expenses incurred by the totally disabled spouse of an individual then insured by WEIC but formerly insured by Blue Cross. We hold that Blue Cross' ninety-day extension of benefits provision was reasonable and that Blue Cross was not responsible for expenses incurred after ninety days from the date of termination of Blue Cross' contract. We reverse the judgment of the trial court.

From September 5, 1978, to May 20, 1979, Mrs. Alma Ladwig (Ladwig) was hospitalized and under a physician's care at St. Joseph's Hospital in Milwaukee. Ladwig's expenses were covered by health insurance as the spouse of an employee of the city of Greenfield. Greenfield employees had group health care coverage under the predecessors of Blue Cross, Associated Hospital Service, Inc. ("The Blue Cross Plan of Wisconsin"), and Surgical Care (the Blue Shield Plan of the Medical Society of Milwaukee County). Surgical Care became Surgical Care Blue Shield, Inc., on January 1, 1979; and effective January 1, 1980, Associated Hospital Service and Surgical Care Blue Shield merged to become Blue Cross & Blue Shield United of Wisconsin. We will not distinguish between Blue Cross and its predecessors in this opinion but will simply use the designation, "Blue Cross."

Three separate contracts comprised the insurance package sold by Blue Cross to the city of Greenfield. There was a contract for hospital service benefits, one for surgical and medical benefits (i.e., professional fee expenses) and one for major medical benefits (i.e., physician office visits and prescription drugs plus hospital and surgical-medical expenses after exhaustion of benefits under basic coverage).

All three contracts provided for a period of "extended benefits" for covered individuals totally disabled at the time the contract was terminated, as required by Wis. Admin. Code sec. Ins 6.51(6)(d) (1976). In conformity with a safe-harbor provision in the aforementioned insurance regulation, the hospital services and surgical-medical benefits contracts provided an extension of benefits for ninety days after termination for totally disabled persons not eligible for coverage under a succeeding carrier's contract. The major medical contract provided an extension of benefits for twelve months under the same conditions; the twelve month period also conformed to a safe-harbor provision of the above-cited administrative regulation.

The city of Greenfield did not renew the Blue Cross contracts when they expired on December 31, 1978. The contracts were replaced, effective January 1, 1979, with an insurance policy issued by WEIC. The single WEIC contract was organized in a manner similar to the Blue Cross package of contracts with segregated sections for hospital benefits, physician expense benefits and major medical benefits. The hospital benefits and in-hospital physician expense benefits sections contained ninety-day extension of benefits provisions for persons totally disabled at the time the contract terminated. The major medical benefits section of the policy contained a provision for a twelve-month extension of benefits.

The WEIC policy also provided coverage for employees and dependents totally disabled at the time the policy took effect. Benefits for such persons were limited under the policy to the amount of benefits that would have been payable under the prior carrier's insurance, had it remained in effect, and were reduced by the amount of any benefits paid by the prior carrier.

Ladwig's covered hospital and medical expenses for the period from her admittance to the hospital on September 5, 1978, through December 31, 1978, were paid by Blue Cross. In addition, Blue Cross paid Ladwig's covered hospital and medical expenses as extended benefits for the ninety-day period from January 1, 1979, through March 31, 1979. The extended benefits paid by Blue Cross for this ninety-day period totaled $30,244.10.

For the period from April 1, 1979, through the date of her death, May 20, 1979, Ladwig's covered hospital and medical expenses totaled $32,053.67. Blue Cross and WEIC agreed that each would pay one-half of the expenses for the period pending resolution of the dispute as to liability. WEIC paid all of the medical expenses, $642.50, and half of the hospital expenses, $15,705.58. The remaining hospital expenses were not paid by either party.

WEIC commenced this action against Blue Cross to recover the payments it had made and also for a determination that Blue Cross was liable for the unpaid portion of Ladwig's hospital expenses. Blue Cross denied liability and, inexplicably, counterclaimed for payments it alleged it had made on behalf of Ladwig for the period from April 1, 1979, to the date of Ladwig's death in the amount of $15,748.08. However, the trial court found, and Blue Cross concedes, that Blue Cross made no payments for Ladwig for the period April 1 through May 20, 1979.

The trial court determined that Blue Cross' contract of insurance with the city of Greenfield was a comprehensive medical type of coverage within the meaning of the administrative code and that the ninety-day extension of benefits provision was unreasonably short. The trial court determined that Blue Cross was liable for all of Ladwig's medical expenses including those incurred between April 1, 1978, and the date of her death, and ordered that Blue Cross reimburse WEIC for benefits the latter had paid for that period. The court also ordered Blue Cross to pay the unpaid portion of Ladwig's expenses for the same period to St. Joseph's Hospital. Blue Cross was also ordered to pay prejudgment interest, from May 8, 1980, on both amounts.

Blue Cross raises three issues on appeal: (1) whether Blue Cross is liable for payment of any extended benefits because the insured was eligible for coverage under the contract of the succeeding insurer, WEIC; (2) whether Blue Cross' maximum liability is ninety days under the safe harbor administrative regulations because the benefits paid were not paid under the major medical portion of the insurance contract; and (3) whether Blue Cross is liable for prejudgment interest.

Blue Cross first contends it has no liability for any extended benefits on behalf of Ladwig and that it should be reimbursed for the $30,244.10 in benefits it paid for the period from January 1, 1979, to March 31, 1979. Blue Cross claims to have counterclaimed for that amount and asserts the "trial court erred in dismissing [its] counterclaim." An examination of the pleadings reveals that Blue Cross counterclaimed, not for the January 1—March 31 benefits paid, but rather for the benefits purportedly paid for the period April 1 to May 20. As noted earlier, Blue Cross did not make any payments

for expenses incurred in the April 1—May 20 period. Dismissal of Blue Cross' counterclaim was a foregone conclusion under the circumstances.

As for Blue Cross' liability for expenses incurred in the first ninety days of the post-termination date period, it appears Blue Cross is raising this issue for the first time on appeal. The pleadings and trial record suggest that Blue Cross conceded its liability for expenses incurred during the first ninety days. Issues raised for the first time on appeal will generally not be considered by an appellate court. *County of Columbia v. Bylewski,* 94 Wis. 2d 153, 171, 288 N.W.2d 129, 138–39 (1980). We see no reason to depart from the general rule here.

The second, and dispositive, issue on this appeal is whether Blue Cross has a maximum liability for extended benefits in this case of ninety days. We hold that the trial court erred in determining that the ninety-day extension period was unreasonably short.

The salient facts are undisputed. What is essentially at issue is the interpretation of administrative regulations; this, like the construction of statutes, is a question of law. *See State v. Killebrew,* 115 Wis. 2d 243, 251, 340 N.W.2d 470, 475 (1983).

Wis. Admin. Code sec. Ins 6.51, as it existed in 1978 when Blue Cross' contract with the city of Greenfield was in effect, provided, in pertinent part, as follows:[1]

(2) SCOPE. This rule shall apply to all insurance policies issued or provided by an insurance company . . . on a group or group type basis covering persons as employes of employers or as members of unions or associa-

---

[1] Wis. Admin. Code sec. Ins 6.51 has since been amended. All references herein are to the 1976 version. *See* Wisconsin Administrative Register, Sept. 1976, no. 249.

tions and to subscriber contracts issued or provided by an organization under authority of [the Wisconsin Statutes], on a group or group type basis covering persons as employes of employers or as members of unions or associations.

. . . .
(6) EXTENSION OF BENEFITS. (a) Every group policy or other contract subject to this rule hereafter issued, or under which the level of benefits is hereafter altered, modified, or amended, must provide a reasonable provision for extension of benefits in the event of total disability at the date of discontinuance of the group policy or contract during the continuance of total disability as required by the following paragraphs of this section.

. . . .
(d) In the case of hospital or medical expense coverages other than dental and maternity expense, a reasonable extension of benefits or accrued liability provision is required. Such a provision will be considered reasonable if it provides an extension of at least 12 months under major medical and comprehensive medical type coverages, and under other types of hospital or medical expense coverages provides either an extension of at least 90 days or an accrued liability for expenses incurred during a period of disability or during a period of at least 90 days starting with a specific event which occurred while coverage was in force (e.g. an accident).

Section Ins 6.51(6)(d) (1976) requires a "reasonable extension of benefits or accrued liability provision" for "hospital or medical expense coverages other than dental and maternity . . . ." The section goes on to add a safe harbor provision under which an extension of benefits will automatically be deemed reasonable if it extends benefits twelve months under major medical and comprehensive coverages and ninety days under other types of hospital or medical expense coverages.

The determination whether Blue Cross' ninety-day extension provision was reasonable thus depends on

whether the benefits paid on behalf of Ladwig were paid under a "major medical and comprehensive medical" coverage or under "other types of hospital or medical expense coverages." The trial court ruled that Ladwig's benefits were paid under a comprehensive medical coverage. The trial court implicitly regarded "coverage" as synonymous with "policy" or, as in this case, with a group health insurance package.

It is undisputed that all of Ladwig's hospital benefits paid, or payable, by Blue Cross fall under the hospital service portion of the insurance package because the 365-day benefit limitation therein was not exceeded. Likewise, all surgical-medical benefits paid, or payable, by Blue Cross fall under the surgical-medical portion of the package insofar as the $15,000 benefit limitation therein was not exceeded.

Blue Cross contends that the major medical portion of the package, under which hospital and surgical-medical expenses would be covered after exhaustion of benefits under basic coverage, was never at issue in this case. Therefore, argues Blue Cross, the twelve-month extension of benefits safe harbor is not applicable here; rather, the ninety-day safe harbor is applicable.

WEIC's position, on the other hand, and the position taken by the trial court, is that the three contracts (or portions of the insurance package) cannot be segregated but rather must be read as a single policy or contract for purposes of sec. Ins. 6.51. WEIC asserts that, insofar as the insurance plan sold by Blue Cross to the city of Greenfield covered virtually all types of hospital and medical expenses that might occur, it was a plan of comprehensive coverage to which the twelve-month extension of benefits safe harbor applied.

A reading of the trial transcript discloses that much of the trial focused on whether Blue Cross (formerly

Associated Hospital Service, Inc.) and Blue Shield (formerly Surgical Care) were one entity or two in 1978. WEIC presented evidence intended to show that Associated Hospital Service, Inc., and Surgical Care presented themselves to the city of Greenfield, and to the public at large, as one organization and that therefore the three subscriber contracts should be considered a single policy. By contrast, Blue Cross maintained that Associated Hospital Service, Inc., and Surgical Care were separate legal entities and that the three subscriber contracts must be analyzed separately. In the opinion of this court the pertinent issue is not whether the three subscriber contracts were issued by the same entity or by separate entities but rather whether the contracts constitute one coverage or separate coverages within the meaning of sec. Ins 6.51(6) (d).

"Coverage" is not defined in sec. Ins 6.51 or elsewhere in the regulations; neither is it defined in the statutes. If "coverage" is synonymous with "contract" or "policy" or "insurance package," as the trial court implicitly found, a single contract, policy, or package could have only one applicable extension of benefits period, regardless how many different risks the policy covered. On the other hand, if "coverage" denotes a standard type of risk, as Blue Cross asserts, a contract, policy or insurance package could have several coverages; and the applicable extension of benefits for each coverage would have to be determined separately.

A word or phrase is ambiguous when it is capable of being interpreted by reasonably well-informed persons in either of two senses, the test being whether well-informed persons could have become confused. *In re Estate of Haese*, 80 Wis. 2d 285, 292, 259 N.W.2d 54, 56–57 (1977). Where ambiguity exists in a statute or

regulation, it is permissible to look beyond the face of the statute or regulation to determine the intent of the adopting body. *State v. Tollefson,* 85 Wis. 2d 162, 167, 270 N.W.2d 201, 203 (1978). We deem the word "coverage" ambiguous, and we therefore resort to judicial construction to determine the intent of the office of the commissioner of insurance in adopting sec. Ins 6.51.

Webster's Third New International Dictionary (1966) defines coverage, in the context of insurance, as "protection by insurance policy: inclusion within the scope of a protective or beneficial plan." Under this definition, coverage could mean either the sum of the risks insured against or one of the types of risks insured against.

Our supreme court has used the term, coverage, in both of the above senses. In *D'Angelo v. Cornell Paperboard Products Co.,* 59 Wis. 2d 46, 51, 207 N.W.2d 846, 849 (1973), the court said, "Coverage or coverages as that word is generally used refers to the sum of risks which an insurance policy covers." However, in *Amidzich v. Charter Oak Fire Insurance Co.,* 44 Wis. 2d 45, 53, 170 N.W.2d 813, 817 (1969), the court said:

Although a legislature or a court cannot *ex post facto* compel the performance of conditions in a contract which the parties did not contemplate or bargain for, coverages omitted from an insurance contract may nevertheless be compelled and enforced as though a part thereof where the inclusion of such coverage is required by a properly enacted statute. In such case a policy of insurance omitting a required coverage will be enforced as though it had been written in accordance with the legislative prescription.

The above passage employs the term, coverage, to mean a kind of standard risk, any number of which may be contained in a single insurance contract.

*Amidzich* and *D'Angelo* illustrate the dual usages of the term, coverage. The question remains what meaning

the term, coverage, was intended to have as it is used in sec. Ins 6.51.

We find guidance in another section of the insurance regulations, Wis. Admin. Code sec. Ins 3.27(4)[2] which regulates advertising of "accident and sickness insurance." Statutes on the same subject matter as the statute being construed may be used as an aid in construction. *See Wisconsin Bingo Supply & Equipment Co. v. Bingo Control Board*, 88 Wis. 2d 293, 303, 276 N.W.2d 716, 720 (1979). Section Ins 3.27(4) defines standard types of accident and sickness insurance coverages. The pertinent portions of the section are as follows:

(4) COVERAGE TYPES. (a) An advertisement which is an invitation to inquire or an invitation to apply shall clearly and prominently designate and at least briefly describe *the type or types of coverage provided by the policy* advertised. The level and extent of benefits provided by or available under the coverage shall also be clearly indicated.

(b) *The following are the standard types of coverage designations* and the minimum adequate form of description that must be used. *Any type of coverage* authorized by Wisconsin Statutes *which is not reasonably included within one or more of the standard coverage types* listed shall be similarly and appropriately named and described so as to clearly disclose the benefits provided.

1. Basic hospital expense benefits. This coverage provides benefits for hospital room and board and miscellaneous hospital charges, based upon actual expenses incurred, up to stated maximum amounts.

2. Basic medical expense benefits. This coverage provides benefits for medical benefits based upon actual expenses incurred, up to stated maximum amounts.

3. Basic surgical expense benefits. This coverage provides benefits for surgical benefits based upon actual expenses incurred up to stated maximum amounts.

---

[2] Wis. Admin. Code sec. Ins 3.27(4) has not been amended since the time relevant to this action.

4. Major medical or comprehensive expense benefits. These coverages provide high maximum benefit amounts covering almost all types of medical care and contain deductible and co-insurance features. [Emphasis added.]

"Coverage," as used in sec. Ins 3.27(4), connotes a particular type of risk, any combination of which may be contained within a given policy. The descriptive names of the standard coverages in sec. Ins 3.27(4) are virtually identical to those used in sec. Ins 6.51(6)(d). Thus, hospital coverage, medical coverage, surgical coverage, and major medical or comprehensive coverage constitute standard types of risks insured against. We conclude that, in the context of the insurance package sold by Blue Cross to the city of Greenfield, the hospital, surgical-medical, and major medical coverages were individual components of the package and segregable for purposes of analysis under sec. Ins 6.51(6)(d).

Our conclusion that a "coverage" is a particular type of risk, for purposes of sec. Ins 6.51(6)(d), is consistent with WEIC's own apparent interpretation of the term, as manifested in the language and organization of its policy. WEIC's policy set forth its hospital, medical-surgical and major medical benefits in separate sections of the policy. The hospital and medical-surgical portions of the policy each contained a ninety-day extension of benefits provision. The major medical portion of the policy contained a twelve-month extension of benefits provision. Consistent with sec. Ins 6.51(6)(d), no extension was provided for maternity leave benefits. Dental expenses were not covered by the policy. Thus, WEIC's separate treatment of its basic coverages and its comprehensive-major medical coverage, for purposes of compliance with sec. Ins 6.51(6)(d), belies its asserted belief that a total-coverage health plan constitutes "comprehensive" coverage under 6.51(6)(d) such that the

required extension of benefits period is twelve months, regardless what section of the policy benefits are payable under.

Benefits paid and payable to Ladwig were under the hospital and surgical-medical coverages of the Blue Cross package. Under sec. Ins 6.51(6)(d) a ninety-day extension of benefits for hospital or medical expense coverages is considered reasonable. Blue Cross extended benefits to Ladwig for ninety days after the termination of its contract with the city of Greenfield. We hold that this extension of benefits was reasonable. Blue Cross was not required to extend Ladwig's benefits beyond ninety days under sec. Ins 6.51(6)(d). The trial court erred in holding that the ninety-day extension period was unreasonably short. Accordingly, we reverse the trial court's judgment ordering Blue Cross to pay Ladwig's post-March 31, 1979, expenses and assessing prejudgment interest on those expenses.

Because Blue Cross is not liable for Ladwig's post-March 31, 1979, expenses, we will not address the issue whether the trial court erred in assessing prejudgment interest on those expenses.

*By the Court.*—Judgment reversed.