**MUTUAL BENEFIT LIFE INS. CO., Petitioner-Respondent,†**

v.

**OFFICE OF the COMMISSIONER OF INSURANCE, Respondent-Appellant.**

Court of Appeals

*No. 88-1731. Submitted on briefs May 5, 1989.—Decided June 15, 1989.*

(Also reported in 444 N.W.2d 450.)

---

† Petition to review denied.

---

For the respondent-appellant the cause was submitted on the briefs of *Donald J. Hanaway,* attorney general, and *Robert W. Larsen,* assistant attorney general.

For the petitioner-respondent the cause was submitted on the brief of *Jon P. Axelrod* and *Monica Burkert-Brist,* and *DeWitt, Porter, Huggett, Schumacher & Morgan, S.C.,* of Madison.

Before Gartzke, P.J., Dykman and Eich, JJ.

GARTZKE, P.J. The office of the commissioner of insurance (OCI) appeals from an order setting aside the commissioner's order disapproving a disability policy

form with respect to a proposed rate submitted by Mutual Benefit Life Insurance Company. The issue pertains to sec. 632.895(3), Stats., which provides for mandatory disability coverage for skilled nursing care for certain patients. The issue is whether the statute requires an insurer to pay the actual cost charged for skilled nursing care, up to the maximum set by the department of health and social services, or allows the insurer to set any rate it chooses up to the maximum set by the department. OCI adopted the former construction and the circuit court adopted the latter. We accept OCI's construction and reverse.

Section 632.895(3), Stats., provides in relevant part:

> Every disability insurance policy . . . which provides coverage for hospital care shall provide coverage for at least 30 days for skilled nursing care to patients who enter a licensed skilled nursing care facility within 24 hours after discharge from a general hospital. The daily rate payable under this subsection shall not exceed the maximum daily rate established for licensed skilled nursing care facilities by the department of health and social services. The coverage under this subsection . . . may be subject to a deductible that applies to the hospital care coverage provided by the policy.

Mutual Benefit is an insurance corporation doing business in Wisconsin. It submitted its disability policy form to OCI for approval. The form proposed to pay a daily rate of $50 or the actual charge for skilled nursing care, whichever is less. The department of health and social services rate exceeds $50 per day for some facilities. OCI disapproved the form on grounds that it did not comply with sec. 632.895(3), Stats., with respect to the proposed rate for skilled nursing care. Mutual Benefit requested a hearing. The hearing examiner found that

OCI had not changed its construction of the statute since it was adopted in 1975[1] and concluded that OCI's construction was correct. The commissioner adopted the findings and conclusions of the examiner and issued the order disapproving Mutual Benefit's policy form with respect to the proposed rate.

Mutual Benefit petitioned for review under ch. 227, Stats. The circuit court concluded that sec. 632.895(3), Stats., requires only that coverage for skilled nursing care not exceed the maximum daily rate established by the department and does not require a minimum level of coverage. The court therefore set aside the commissioner's order. We disagree with the court's conclusion, and since our scope of review is identical to that of the trial court, we need not accept it. *Boynton Cab Co. v. ILHR Department,* 96 Wis. 2d 396, 405, 291 N.W.2d 850, 855 (1980). Nor do the agency's conclusions bind us, since questions of statutory construction are questions of law. *City of La Crosse v. DNR,* 120 Wis. 2d 168, 179, 353 N.W.2d 68, 73 (Ct. App. 1984).

We begin with the commissioner's role regarding insurance policy forms. Section 631.20(1), Stats., provides in substance that an insurance policy form delivered or issued for delivery in this state may not be used "unless it has been filed with and approved by the commissioner." The commissioner may disapprove a form if it violates a statute or a rule promulgated by the com-

---

[1]The statute was created by sec. 25, ch. 371, Laws of 1975. It has been renumbered on three different occasions. *See* sec. 21, ch. 339, Laws of 1977; ch. 75, Laws of 1979; and sec. 12, ch. 39, Laws of 1981. Although the language has been amended or altered since then, the changes in wording are not relevant to the issue before us. *See* ch. 75, Laws of 1979; sec. 814, ch. 221, Laws of 1979; sec. 12, ch. 39, Laws of 1981; and sec. 2337, 1985 Wis. Act 29.

missioner or is otherwise contrary to law. Sec. 631.20(2)(d). True to its title of "mandatory coverage," sec. 632.895, Stats., specifies many types of coverage which a disability insurance policy must contain. The statute is one which the commissioner administers.

The meaning of the second sentence in the statute is uncertain, since it calls for a "daily rate payable under this subsection" but only partially defines it. For that reason, we apply the rule that the construction of a statute by the agency which administers it is entitled to great weight. As a general rule, a reviewing court should not upset an administrative agency's construction of a statute if it has a rational basis. *Environmental Decade v. ILHR Dept.,* 104 Wis. 2d 640, 644, 312 N.W.2d 749, 751 (1981). This is especially the case with a longstanding construction by the agency. *Pigeon v. ILHR Department,* 109 Wis. 2d 519, 524–25, 326 N.W.2d 752, 755 (1982).

The examiner inferred, and we agree, that when a statute such as sec. 632.895(3), Stats., specifies mandatory insurance coverage for certain health services, the legislature intended that the insurer will pay for those services, subject to whatever limitations the legislature imposes. It is therefore reasonable to construe the statute as requiring the insurer to pay the facility's actual daily charge for skilled nursing care, up to the maximum set by the department of health and social services.

Indeed, the construction of sec. 632.895(3), Stats., proposed by Mutual Benefit is unreasonable. That construction could effectively negate mandatory coverage simply by providing nominal payments for covered ser-

vices. Health care coverage bearing no relationship to the cost of the care can be no coverage at all.

OCI's construction of sec. 632.895(3), Stats., is not only reasonable but is one which the hearing examiner found OCI has employed since the statute was adopted in 1975. As we have said, this is an additional reason for us to defer to the agency's construction. *Pigeon,* 109 Wis. 2d at 524-25, 326 N.W.2d at 755.

We therefore reverse the order of the circuit court and remand with directions to affirm the commissioner's order.

*By the Court.*—Order reversed and remanded with directions.

DYKMAN, J. (*dissenting*). Both parties agree that sec. 632.895(3), Stats., is unambiguous. However, the OCI concludes that a legislative requirement of insurance "coverage" really means "full coverage" of all expenses, subject to a cap determined by another agency.

"[C]overage could mean either the sum of the risks insured against or one of the types of risks insured against." *Employers Ins. v. Blue Cross & Blue Shield,* 124 Wis. 2d 335, 345, 368 N.W.2d 838, 843 (Ct. App. 1985) (citing Webster's Third New International Dictionary (1966)). Wisconsin statutes are to be construed according to common and approved usage. Sec. 990.01(1), Stats.

Simplicity is the primary standard in expressing legislative policy. Wisconsin Bill Drafting Manual, 1989-90, sec. 2.001(3). The simplest way to interpret the first sentence of sec. 632.895(3), Stats., is to focus on its central requirement—the thirty-day period of required coverage. The OCI has expanded that purpose from a time requirement to a time and dollar requirement.

The majority finds sec. 632.895(3), Stats., unclear because it only partly defines the "daily rate payable under this subsection." There is no need for a specific daily rate to be included in the statute. The daily rate is left to the seller and purchaser of the policy. Policy purchasers may need more or less protection and may not wish to pay for protection they do not need. The legislature is entitled to protect those who do not need full coverage from being forced to pay for it nonetheless. The legislature is also entitled to require full coverage, but it has not done so. The majority chooses to remedy this "oversight" by adding language to the statute. While that might be better public policy, it is not the policy the legislature chose.

The majority fears that unless it requires full coverage for services, insurance policies will provide coverage of one cent per day for skilled nursing care. This fear is groundless. An insurance company that used such a policy would be held up to ridicule by its competition and the media. Even if an insurance company decided to risk such a scam, it would not succeed. Section 631.20, Stats., gives OCI the power to decide whether a proposed policy is fair and equitable. A policy of the sort suggested by the majority would never pass muster under sec. 631.20.

I recognize the deference we give to an agency's interpretation of a statute which it administers. However, deference has limits, and deference ceases when an agency's construction of a statute does not have a rational basis. *Environmental Decade v. ILHR Dept.*, 104 Wis. 2d 640, 644, 312 N.W.2d 749, 751 (1981). It is not rational to interpret a statute which speaks to a time limit for coverage as also requiring an unstated dollar

amount of coverage. I would interpret sec. 632.895(3), Stats., to mean what the legislature intended it to mean.