CARROLL D. BESADNY, Secretary Department of Natural Resources
You have asked for an opinion on whether the shining[1]
prohibition contained in section 29.245, Stats., applies to game farms. Then Attorney General Bronson LaFollette addressed this question in an opinion issued in 1983, and indicated then that animals located on game farms were considered "unprotected animals" and therefore fell within the exception to the shining proscription. 72 Op. Att'y Gen. 43, 45 (1983). According to that opinion, the shining of unprotected animals (as well as raccoons and foxes) was permitted, provided the light was used only at the point of kill. More accurately stated, then, your present question requests reconsideration of this former opinion.
Before addressing the merits of your question, however, I am compelled to first explain why reconsideration is appropriate. It should be initially noted that for years your department has had no cause to have this matter reconsidered. As your staff advised me, it is only recently that the incidence of game farm shining has increased to levels, which in your department's opinion, present potential safety problems. Regarding the former opinion, I believe that it does not address two issues critical to resolution of your question, namely, what is meant by the term "unprotected animals" as used in the shining law and how to reconcile the conflicting law created by the interaction of the *Page 8 
shining law with the game, fur and deer[2] farm statutes. While the prior opinion states that game farm animals are unprotected, it contains no reasoning to support that conclusion. Even if that analysis had been performed, there is, however, the additional issue of whether the shining prohibition can be applied to game, fur and deer farms,[3] despite other statutes (sections 29.574(6)(a), 29.575(4) and 29.578(4)) which permit harvest of these licensed farm animals in almost any manner. In view of the fact that these issues were unaddressed in the prior opinion, I believe that reconsideration is necessary. Moreover, since the issuance of the 1983 opinion, new case law has developed regarding some objectives of Wisconsin's shining law. I have therefore reviewed this matter in light of the recent case law on shining and the unprotected animal regulation, and concluded that the shining prohibition is applicable to all animals permitted on game, fur or deer farms with the exception of three species, namely, skunk, weasel, and opossum.
The relevant sections of the shining law, section 29.245, are as follows:
 (3) SHINING DEER OR BEAR WHILE HUNTING OR POSSESSING WEAPONS PROHIBITED. (a) Prohibition. No person may use or possess with intent to use a light for shining deer or bear while the person is hunting deer or bear or in possession of a firearm, bow and arrow or crossbow.
. . . .
 (4) SHINING WILD ANIMALS WHILE HUNTING OR POSSESSING WEAPONS PROHIBITED. (a) Prohibition. No person may use or possess with intent to use a light for *Page 9 
shining wild animals while the person is hunting or in possession of a firearm, bow and arrow or crossbow.
(b) Exceptions. This subsection does not apply:
. . . .
 2. To a person who possesses a flashlight or who uses a flashlight at the point of kill while hunting on foot raccoons, foxes or other unprotected animals during the open season for the animals hunted.
 (5) SHINING WILD ANIMALS AFTER 10 P.M. DURING CERTAIN TIMES OF THE YEAR PROHIBITED. (a) Prohibition.
No person may use or possess with intent to use a light for shining wild animals between 10 p.m. and 7 a.m. from September 15 to December 31.
(b) Exceptions. This subsection does not apply:
. . . .
 2. To a person who possesses a flashlight or who uses a flashlight at the point of kill while hunting on foot raccoons, foxes or other unprotected animals during the open season for the animals hunted.
The law prohibits the practice of shining deer, bear or other wild animals while hunting or in possession of firearms or other weapons. The law also prohibits the shining of wild animals during certain periods of the year without use or possession of weapons. While shining is recognized as a very effective harvest method, the practice is prohibited to safeguard the public health and safety. See Lac Courte Oreilles Band of Indians v. Wisconsin,740 F. Supp. 1400, 1408, 1423 (W.D. Wis. 1990) (hereafter cited as "LCO").
There are, however, exceptions to the general shining proscription. The one relevant to this opinion concerns shining what are referred to as "unprotected" animals. Subsecs. 29.245(4)(b)2., (5)(b)2., Stats. Hunters traveling on foot may shine these animals at the "point of kill." As your staff has explained, this term generally refers to illuminating the animal *Page 10 
after the hunter has located the target animal and not at some prior point. The light cannot be used to locate or search out the animal in the dark. For example, in shining raccoons, point of kill refers to the practice of using the light to illuminate the raccoon in the tree after its identification, rather than to cause the animal to "freeze" on the ground as with deer. See LCO,740 F. Supp. at 1408. The specific application of the term point of kill is, however, contingent upon the hunting practices commonly associated with those animals subject to shining, but in any event refers to the point in time after the identification of the targeted animal.
The first issue presented by your request is whether any of the animals permitted on game, fur or deer farms are subject to the shining exemption for unprotected animals under section 29.245. This raises a subsidiary question of what is meant by the term unprotected animal under the shining law. Although chapter 29 does not contain a definition for this term, your department's game and hunting regulations do define a similar term, unprotected wild animal, at Wisconsin Administrative Code sectionNR 10.04.[4] It should be noted initially that the difference between these terms is not significant for two reasons. First, wild animals are defined under section 29.01(14) as including any mammal, bird or fish. With this broad definition, there does not appear to be a real distinction between the terms animal and wild animal for purposes of this opinion. Second, subsections (4) and (5) of section 29.245 actually reference the term wild animals. *Page 11 
I also conclude that the NR 10.04 definition should be applied to interpret the term unprotected animal in the shining law. The legislative history of section 29.245 reveals that it was enacted in chapter 190 of the Laws of 1979 and replaced the Department of Natural Resources ("DNR") regulations prohibiting the shining of wild animals while hunting or in possession of weapons. 71 Op. Att'y Gen. 49, 50 (1982). While the Legislature adopted the DNR's shining prohibition, it did not enact in 1979 or subsequently any corollary definition for the term unprotected animal. As of 1979, DNR had, however, published a rule (NR 10.04) defining unprotected wild animals, and this rule has not been changed to date. I am mindful that the Legislature is presumed to have full knowledge of existing laws and administrative agency regulations at the time it enacts new laws. Kindy v. Hayes, 44 Wis.2d 301,314, 171 N.W.2d 324 (1969). Since NR 10.04 was effective at the time of the shining law enactment and no other definition was enacted for unprotected animals in 1979 or thereafter, it is reasonable therefore to apply your department's regulatory definition of unprotected wild animals to interpret a similar term contained in the shining law.
Next, I address the application of NR 10.04 to the shining law. There is the threshold matter of which animals are permitted on game, fur and deer farms. They are: otter, beaver, mink, muskrat, marten, fisher, skunk, raccoon,[5] fox,[6] weasel, opossum, badger, wolf, coyote, wildcat, lynx, deer, moose, elk, bear, rabbits and squirrels. Wis. Admin. Code § NR 16.02 (incorporates by reference subsections 29.01(4), (6)). SectionNR 10.04 enumerates three subsections of unprotected wild animals. The first and second subsections identify particular species that are not protected. Subsection three is the catch all *Page 12 
phrase, stating that all animals unspecified in DNR's hunting and trapping regulations are considered unprotected. For these unprotected animals, there are no restrictions on harvest methods, open or closed seasons, bag limits or the like. It is also significant that NR 10.04 does not reference game, fur or deer farm animals as unprotected. Rather, it appears that in determining whether an animal falls within the unprotected class, the animal's genus and not its geographical location is important. With the exception of skunk, weasel and opossum,[7]
the animal species permitted on game, fur and deer farms (as listed above) are specified in NR 10. These animal species, regardless of their location, are regulated by season[8] and thus are excepted from the unprotection definition inNR 10.04(3). An analysis of section 29.245 alone proves therefore that the shining prohibition is applicable to game, fur and deer farms because the animals permitted on these farms (with the exceptions previously noted) do not fall under the shining exemption for unprotected animals.
The second issue presented by your request is how to resolve the conflict created by the interaction of the shining law with the game, fur and deer farm statutes. These laws (sections *Page 13 
29.245, 29.574(6)(a),[9] and 29.575(4)[10] and 29.578(4)[11]) are not necessarily ambiguous standing on their own. Rather, it is their interaction which creates conflicting results and poses more difficult problems to resolve. I will first discuss the ambiguity created by the interaction of the statutes, followed by a discussion seeking to harmonize them.
Courts will not generally interpret statutes absent ambiguity.Dept. of Transp. v. Transp. Comm., 111 Wis.2d 80, 87-88,330 N.W.2d 159 (1983). An ambiguity exists when reasonably informed persons could disagree about the meaning of the statute or statutes. Employers Ins. v. Blue Cross Blue Shield, 124 Wis.2d 335,344-45, 368 N.W.2d 838 (Ct.App. 1985). Ambiguity is created by the interaction of statutes when persons disagree as to what the statutes require. Sweet v. Medical Examining Board, 147 Wis.2d 539,544, 433 N.W.2d 614 (Ct.App. 1988). This is the case regarding the interaction of the shining law with the game, fur and deer farm laws.
The shining law does not provide any exemption for shining on game, fur or deer farms. Sec. 29.245, Stats. As discussed above, the exceptions to the shining prohibition are narrowly drawn. I have already reviewed for those animals permitted on *Page 14 
private animal farms precisely which ones may be shined under section 29.245. This would thus appear to end the inquiry regarding the extent of the shining exceptions. Under different statutes, however, game and fur farm licensees are permitted to harvest these animals at any time in any manner. Secs. 29.574(6)(a) and 29.575(4), Stats. These laws, at least on their face, permit licensees to harvest animals located on their farms by completely unrestricted methods, without regard for the shining proscription contained earlier in chapter 29. The deer farm statute, section 29.578, presents a similar problem. Subsection (4) of section 29.578 permits deer farm licensees to harvest their deer as provided for by that statute. The only harvest limitations placed on these licensees regard persons authorized to harvest deer on these farms and tagging and notice requirements subsequent to the harvest. Subsecs. 29.578(7), (8), (9), Stats. With the exception of these restrictions, section 29.578 permits deer farm licensees too harvest their deer by any method, again regardless of the shining prohibition. The interaction of section 29.245 with sections 29.574(6)(a), 29.575(4) and 29.578(4) creates therefore an ambiguity because reasonable persons could disagree regarding whether shining is permitted on game, fur or deer farms.
Where an ambiguity exists, as here, it is necessary to look beyond the face of the statute and apply the rules of statutory construction. Sweet, 147, Wis.2d at 544. The construction rules require an examination of statutory context, subject matter, scope, history, and objectives to be accomplished in order to discern the Legislature's intent. Id. Conflicts between different statutes are generally not favored and should be reasonably construed and harmonized so as to give each full force and effect. Law Enforce. Stds. Bd. v. Lyndon Station, 101 Wis.2d 472,489-90, 305 N.W.2d 89 (1981); Glinski v. Sheldon, 88 Wis.2d 509,519, 276 N.W.2d 815 (1979). *Page 15 
The legislative history of these laws helps to illuminate the Legislature's intent in their enactment. The game farm law, section 29.574, was enacted in chapter 369 of the Laws of 1929, and at that time did not address methods or times of harvest on these farms. In the Laws of 1961, chapter 77, section 4, the statute was revised, however, to authorize licensees to harvest their animals, with the exception of waterfowl, in any manner.[12] Subsection (4) of section 29.575, the fur farm statute, was created in chapter 322, section 10, Laws of 1975, and codified the previous laws referencing harvesting of muskrats, minks, otter, raccoon or skunk in any manner.[13] The deer farm statute, section 29.578, was enacted in chapter 508, Laws of 1929, and has remained unchanged except for some editorial revisions not pertinent to this issue.
Despite the enactment of these laws, the shining law was subsequently created in 1979[14] without providing exemptions for shining on private animal farms. Since the Legislature is presumed to have been familiar with the game, fur and deer *Page 16 
farms statutes when it enacted the shining law,[15] it is reasonable to infer that the Legislature did not intend to except these private farm animals from the shining prohibition. Aside from not excepting these animals in 1979, the Legislature has also not seen fit to broaden the shining exemptions since the law's initial enactment.
Subsections (6)(a) and (c) of section 29.574 and subsections (8) and (14) of section 29.578 are revealing in that they cast light on the legislative purpose of these laws. Generally each part of the statute should be interpreted with every other part so as to produce harmonious result. Milwaukee County v. ILHRDept., 80 Wis.2d 445, 454 n. 14, 259 N.W.2d 118 (1977). In determining the meaning of a single phrase in a statute, it is necessary to examine it in light of the entire section.Gottfried, Inc. v. Dept. of Revenue, 145 Wis.2d 715, 720,429 N.W.2d 508 (Ct.App. 1988).
Subsection (6) of the game farm law requires licensees to band or tag all animals that are sold or removed from the farm for food consumption. Licensees must also retain sale records for animals acquired for food consumption. As your staff has advised, and is reasonable to infer, one purpose of this subsection is to help guard against the sale and distribution of adulterated food. In the event contaminated meat enters the marketplace, the tagging and recordkeeping requirements would assist in tracking the source of the contamination and hopefully prevent further sale of the contaminated food. Subsections 29.578(8) and (14) also contain similar tagging requirements for the sale of deer. I submit that these subsections are aimed at safeguarding the public health. This purpose suggests that the Legislature intended to authorize private animal farm licensees to operate their farms subject to those regulations necessary to *Page 17 
protect human health and safety.[16] I conclude that the shining prohibition is also necessary to protect human safety and should therefore be applied to game, fur and deer farms.
A court recently addressed the objectives of Wisconsin's shining law and concluded that section 29.245 is indeed reasonable and necessary to protect human safety. LCO,740 F. Supp. at 1423. The court concluded that regarding those species which may be shined at the point of kill, they are typically shot with lower caliber bullets and some may be hunted in trees, as opposed to on the ground. LCO, 740 F. Supp. at 1408. If an animal is shined in the tree and the target is missed, the bullet will fall harmlessly to the ground, rather than traveling straight and potentially injuring someone. LCO, 740 F. Supp. at 1423. The court found, however, that shining other species in conjunction with the use of high caliber weapons poses significant safety risks. Id. At night, hunters cannot see what lies beyond their target to identify whether there are persons nearby in homes or campsites. Id. Aside from not knowing what may exist beyond the hunted target, there is the added danger of the force and range of the ammunition that extends far away from the hunter, which presents unacceptable safety risks to the public in and around the hunted area. Id.
These same safety risks also exist on game, fur and deer farms. As stated in your request, nothing precludes a bullet or arrow from going beyond the boundaries of the licensed farm area and injuring people. You also indicated that many game farms are surrounded by nearby residences and public roads, all jeopardizing the public safety, if shining was permitted on these and other private animal farms. *Page 18 
While game, fur and deer farm operators are generally not subject to harvest regulations regarding the animals purchased for their farms, this authority if taken to an extreme could very well result in significant and unnecessary safety problems. Licensees could argue that in addition to shining, they should be authorized to use spring guns, since the law grants them authority to harvest their animals by any manner. Certainly, the Legislature could not have desired these kinds of results, namely, endangerment of public health and safety, in the enactment of sections 29.574(6)(a), 29.575(4) and 29.578(4). It is a basic rule of statutory construction that statutes should be interpreted to avoid absurd or unreasonable results. State v.Pham, 137 Wis.2d 31, 34, 403 N.W.2d 35 (1987); Acquisition ofCertain Lands by Benson, 101 Wis.2d 691, 697, 305 N.W.2d 184
(Ct.App. 1981). To authorize shining, with its attendant unacceptable safety risks, on private animal farms would be to adopt a statutory construction in derogation of common sense, which is impermissible to do. See State v. Clausen, 105 Wis.2d 231,246, 313 N.W.2d 819 (1982). I conclude therefore that there is only one reasonable construction of the shining and private animal farm laws: the shining prohibition should be applied to game, fur and deer farms because it is necessary to protect human safety. With this interpretation, these statutes can be harmonized to provide a rational and sensible construction of the Legislature's intent in the enactment of these laws.
JED:LL
[1] The term shining refers to the practice of illuminating, locating or attempting to illuminate or locate deer or other wild animals with flashlights, automobile lights or other lights. Secs. 29.245(1)(d); 29.245(1)(b), Stats.
[2] While you did not specifically request an opinion on the shining prohibition's applicability to fur or deer farms, I believe that they raise the same issues and therefore have treated them together in this opinion.
[3] These farms will also be collectively referred to as "private animal farms."
[4] Wisconsin Administrative Code section NR 10.04 states: "The following wild animals are designated unprotected. No closed season, bag limit, size limit or possession limit applies to these animals.
(1) Opossum, skunk and weasel.
(2) Starlings, English sparrows, coturnix quail and chukar partridge.
(3) Any other wild animal not specified in this [NR 10] chapter."
[5] This opinion will not address shining of raccoon or fox because section 29.245 clearly permits shining of these animals at the point of kill.
[6] See footnote 5.
[7] See also Wis. Admin Code § NR 10.04(1). Additionally, it should be noted that by excepting these animals, I am not stating that they may be shined absent restrictions. Rather, these unprotected animals may be shined only at the point of kill. See subsecs. 29.245(4)(b)2., (5)(b)2., Stats.
[8] The following regulations establish the open and closed hunting seasons (unless noted otherwise) for the game or fur animal denoted in parentheses: Wis. Admin. Code §§NR 10.01(4)(d) (otter trapping season); NR 10.01(4)(c) (beaver trapping season); NR 10.01(4)(a) (mink and muskrat trapping season); NR 10.02(2) (incorporates by reference Wisconsin's endangered or threatened species list, which includes marten, wolf and lynx); NR 10.02(1) (badger, moose and elk); NR 10.01(3)(h) (coyote); NR 10.01(3)(d) (wildcat); NR 10.01(3)(e) (deer); NR 10.01(3)(g) (bear); NR 10.01(3)(c) (rabbits); NR 10.01(3)(a) (squirrels).
[9] Section 29.574(6)(a) states in relevant part:
 Such game [farm] birds and animals, except waterfowl, may be taken at any time in any manner by persons qualified under this chapter to hunt thereon.
[10] Section 29.575(4) states in relevant part:
 The [fur farm] licensee shall have the right to manage and control said lands and the licensed fur animals thereon, to take the same at any time or in any manner which the licensee sees fit and deems to the best advantage of the licensee's business, and to sell and transport at any time said fur animals or the pelts taken from them.
[11] Section 29.578(4) states in pertinent part:
 After the complete installation of such fence and after the department has satisfied itself that it is satisfactory and complies with the law, it may issue a license to the [deer farm] applicant describing such lands, and certifying that the licensee is lawfully entitled to use the same for the breeding, propagating, killing and selling of deer thereon according to this section.
[12] It should also be noted, however, that in chapter 277, Laws of 1959, the game farm law originally protected a larger class of animals. Section 29.574(6)(a) then authorized licensees to harvest by any method with the exception of deer, ruffed grouse, sharp-tailed grouse, prairie chicken and waterfowl. Since these animals (with the exception of waterfowl) were subsequently deleted in the Laws of 1961, it is arguable that this revision means that the Legislature intended to provide game farm licensees with expansive harvest rights on their property. This revision, however, cannot be read independently, but rather should be construed and harmonized with the related statutes on permissible hunting methods so as to give effect to each provision of the statutes involved. See Hansen Storage Co. v.Wis. Transp. Comm., 96 Wis.2d 249, 256, 291 N.W.2d 534 (1980).
[13] The fur farm statute in its initial enactment only pertained to muskrats. Chapter 344, Laws of 1919, did not restrict the methods of muskrat harvest, with the exception of prohibiting shooting or spearing. Chapter 536, Laws of 1955, authorize fur farm licensees to take otter, raccoon or skunk in any manner. Chapter 459, section 10 of the Laws of 1963, authorized the harvest of mink in any manner.
[14] See discussion, supra.
[15] See Kindy, 44 Wis.2d at 314.
[16] I am not concluding, however, that this is the only purpose for which licensees can be regulated. There may be other permissible purposes for regulating private animal farms, such as protection and conservation of wildlife and assistance with law enforcement. I do not address these questions in this opinion. *Page 19